# IN THE SUPREME COURT OF IOWA

No. 12–1944

Filed December 6, 2013

**JOSEPH W. DEMOCKO, DONALD JONES** and **JAMES SAMIS,**

Appellants,

vs.

**IOWA DEPARTMENT OF NATURAL RESOURCES,**

Appellee.

---

Appeal from the Iowa District Court for Monroe County, Daniel P. Wilson, Judge.

Nonresident landowners assert the decisions of the Iowa Department of Natural Resources to revoke their resident hunting licenses were not supported by substantial evidence and state hunting regulations favoring residents violate the Privileges and Immunities Clause of the United States Constitution. **AFFIRMED.**

John A. Pabst of Pabst Law Firm, Albia, for appellants.

Thomas J. Miller, Attorney General, David R. Sheridan and David L. Dorff, Assistant Attorneys General, for appellee.

**APPEL, Justice.**

In this case, we consider whether the Iowa Department of Natural Resources (DNR) can revoke resident hunting licenses previously granted to Joseph Democko, Donald Jones, and James Samis on the basis they do not qualify as residents under Iowa Code chapter 483A. On judicial review, Democko, Jones, and Samis claim that the agency's decision was not supported by substantial evidence and, in the alternative, that Iowa Code section 483A.24, which grants certain hunting privileges to resident landowners but not to nonresident landowners, is unconstitutional. For the reasons expressed below, we hold substantial evidence supports the agency's determination and section 483A.24 does not violate the Privileges and Immunities Clause contained in Article IV, Section 2 of the United States Constitution. We therefore affirm.

## I. Factual and Procedural Background.

During July 2010, the DNR issued notices to Democko, Jones, and Samis indicating that, following a review of documents submitted to the DNR, each did not meet the criteria to claim resident status under Iowa Code section 483A.1A(9) and that establishing residency solely for the purposes of hunting was improper under Iowa Code section 483A.1A(10). The DNR further indicated its intention to revoke the resident hunting licenses held by each and invited them to reapply for nonresident hunting licenses. Democko, Jones, and Samis filed separate appeals with the Administrative Hearings Division of the Iowa Department of Inspections and Appeals. In each case, an administrative law judge (ALJ) affirmed the DNR's decision. Democko, Jones, and Samis appealed to the Iowa Natural Resource Commission, which also affirmed. Democko, Jones, and Samis then filed a consolidated petition for judicial review.

Because Democko, Jones, and Samis allege there is not substantial evidence to support the agency's decisions, we set forth the facts specific to each as detailed in the stipulations that each entered into individually with the DNR prior to his contested case hearing and as detailed by the ALJs following the contested case proceedings. We then set forth the findings of the district court.

**A. Joseph Democko.** According to Democko's stipulation, he has substantial ties to North Carolina. He is a doctor of chiropractic medicine licensed to practice in North Carolina. He maintains a chiropractic practice in North Carolina. Though he actively treats patients in North Carolina, Democko spends most of his time running the chiropractic business and leaves the business of seeing patients primarily to three other chiropractors he employs. Democko also owns, supervises, and manages three other businesses in North Carolina. Democko's wife and three minor children live in North Carolina. His car insurance bill, though obtained through an Iowa insurance agent, is forwarded to his North Carolina address, a large home held in his wife's name. Democko files nonresident tax returns in North Carolina. Finally, he holds a lifetime nonresident hunting license issued by the State of North Carolina.

The stipulation also contains facts showing that Democko has ties to Iowa. He holds a chiropractic license in Iowa, provides consulting services to a chiropractor in Albia, is an adjunct professor at Palmer College of Chiropractic in Davenport, and has provided "hands on" chiropractic services in Iowa since February 1, 2010. Democko owns a farm in Monroe County and is president of Wild Lands for the Future, Ltd., an Iowa corporation owning farm real estate in Monroe County. Democko is registered to vote in Iowa and voted in person in Iowa in the

2008 and 2010 general elections. He has also filed resident income tax returns in Iowa since 2006 without challenge from the Iowa Department of Revenue. Democko has consistently held a resident hunting license in Iowa since he established Iowa residency. His utility and other business bills are forwarded to his Iowa address. Democko states Iowa is the place of his true, fixed, and permanent home and the place to where, whenever he is absent, he intends to return.

The ALJ found additional facts. The home Democko claims in Iowa is a small, rustic, cabin-like structure with no landscaping or other indicators of occupancy. Democko admits he is an avid deer hunter and purchased his properties, in part, for the purpose of hunting deer. Democko is typically in Iowa during hunting season and spends at least part of each month in Iowa. Although the parties stipulated that Democko spends approximately thirty-five percent of his time in Iowa, the ALJ noted calendars in evidence showed Democko only spent twenty percent of his time in the state during a recent 225-day period. The same calendars indicated Democko spent approximately forty-five percent of his time in North Carolina and the rest in other states.

The ALJ noted the question of residence, which the ALJ equated with domicile, is a fact-intensive question. The ALJ further noted that, according to the definitions of "principal and primary residence or domicile" and "resident" contained in Iowa Code section 483A.1A(9) and (10), Democko is not an Iowa resident for the purposes of chapter 483A. Instead, the ALJ found that Democko has "stronger, more permanent, and more enduring ties to other states, in particular North Carolina."

The ALJ reasoned that North Carolina is the place to which Democko always returns from travel. According to the ALJ, Democko's "frequent travels to such places as Iowa, New York, and other states are

almost always book-ended by his presence in North Carolina." Further, the ALJ found it significant that Democko spends approximately forty-five percent of his time in North Carolina, as compared to twenty percent in Iowa. The ALJ noted that "[w]hile the percentage of time spent in Iowa as compared to that percentage spent outside of Iowa is not necessarily dispositive to the question of residency, I do find it to be a relevant inquiry." The ALJ also noted North Carolina is where Democko's immediate family, including an infant, reside. The ALJ found it "hard to conclude that [Democko] intends to reside apart from his young and recently enlarged family" based on the lack of any indication Democko's wife or children intend to move to Iowa or become residents of Iowa. In addition, the ALJ noted Democko's business interests in Iowa are "less permanent and presumably less lucrative in nature than his North Carolina businesses." Finally, the ALJ contrasted the rustic cabin in Iowa with the home in North Carolina, an expensive home in an upscale golf and lake development. Based on the above facts, the ALJ concluded Democko does not meet the criteria for obtaining resident hunting and fishing privileges under chapter 483A.

**B. Donald Jones.** According to Jones's stipulation, he spends the majority of his time outside of Iowa. Jones's spouse lives in New Jersey. The couple's New Jersey residence is solely in his wife's name. Jones primarily derives income from his ownership of a UBS financial services office located outside Iowa. Jones is transitioning into retirement, and the business is now operated by Jones's son, though Jones still maintains an advisory role. Jones has obtained nonresident hunting or fishing licenses in Arizona, Kansas, Missouri, New Jersey, New Mexico, and Wyoming.

The stipulation also indicates Jones has contacts with Iowa. For instance, Jones established Iowa residency in 2007. Jones has held an Iowa driver's license since 2007 and was selected to be a juror in Monroe County. Jones does not individually hold properties or vehicles in Iowa, but such assets are owned by Hobbs Lake, LLC and Powderhorn Ridge, LLC, Iowa companies equally owned by Jones and his wife. The companies have filed Iowa resident income tax returns since 2007. Jones himself has filed Iowa resident income tax returns since 2009. Though the companies formerly maintained a New Jersey mailing address, to which mail such as United States Department of Agriculture and Farm Service Agency correspondence was sent, currently all mailings for the companies are sent to their corporate offices in Iowa. Further, the State of Iowa has acknowledged that Jones's companies are actively engaged in farming in Iowa. The crops are insured in the names of the companies, and Jones assumes the financial risk of farming. Jones is registered to vote in the State of Iowa.

The ALJ found Jones spends more than fifty percent of his time outside of Iowa and returns home to New Jersey, where his family lives. The ALJ noted that although Jones plans to build a house in Iowa after his son fully takes over his business in New Jersey, these events have not yet occurred. As a result, the ALJ found Jones does not qualify as a resident of Iowa for the purposes of obtaining resident licensing privileges under chapter 483A.

**C. James Samis.** According to Samis's stipulation, since 2006 he has claimed Iowa residency, held an Iowa driver's license, been a registered Iowa voter, regularly voted in general and special elections in Iowa, and filed Iowa resident income taxes. In 2010, Samis applied for a homestead tax credit in Iowa. Samis resides in the lower portion of his

home in Iowa and rents out the upper portion year round. Samis and his wife own approximately eighty acres in Monroe County. He and his wife own Chesapeake Adventures, LLC, which owns three farms in Iowa. Samis actively farms his eighty acres and the three other farms. He does not employ a third party to oversee the farming operations. Further, just over fifty percent of the company's income is derived from Iowa. Finally, Samis acts as a sales representative in Iowa for numerous companies.

The stipulation also contains Samis's admission that he spends the majority of his time outside of Iowa. In particular, the stipulation shows ties to Maryland. Prior to 2006, Samis claimed Maryland residency. He owns a small business in Maryland. His wife is a Maryland resident employed at a university in Maryland. Further, the limited liability company he owns with his wife is registered in Maryland. Samis has obtained nonresident hunting and fishing privileges in every state other than Iowa.

The ALJ found Maryland was the state to which Samis returned home and where Samis's family lives. The ALJ noted that Samis and his wife own a home and a business in Maryland and that Samis spent a significant amount of time outside Iowa during the year preceding the hearing taking care of his mother who had been ill. The ALJ acknowledged Samis and his wife also own a home and business in Iowa. In light of the evidence, however, the ALJ concluded Samis was not a resident for the purpose of obtaining resident licensing privileges under Iowa Code chapter 483A.

**D. District Court Review of Agency Action.** After the natural resource commission affirmed the decisions of the ALJs, Democko, Jones, and Samis filed a consolidated petition for judicial review in the district court. They claimed Iowa Code section 483A.24(1), which grants

special hunting privileges to resident landowners, was unconstitutional either on its face or as applied to them. Democko, Jones, and Samis further challenged the ALJs' interpretations of Iowa Code section 483A.1A(10) as requiring their physical presence in Iowa for not less than ninety consecutive days prior to filing an application for a resident hunting license. They characterized this alleged interpretation as "a product of reasoning that is so illogical as to render it wholly irrational." Finally, Jones and Samis claimed the ALJ in their cases unlawfully required an applicant for a resident hunting license to reside more than one-half of each year in Iowa.[1]

Upon review of the record, the district court affirmed the agency in a thorough opinion. The district court agreed with Democko, Jones, and Samis that the State of Iowa distinguishes between landowners and nonlandowners for the purposes of hunting licenses under chapter 483A. It determined that to be considered a landowner for the purposes of obtaining landowner hunting privileges, a person must be a resident of Iowa in addition to meeting other statutory requirements. The district court concluded the ALJs' findings that Democko, Jones, and Samis were not Iowa residents were supported by substantial evidence, notwithstanding the facts that each owned land in Iowa and paid taxes in Iowa. The district court pointed to the facts that each spends the majority of his time outside Iowa and that each has a spouse, and in Democko's case minor children, that are residents of the states each returns to frequently. It also relied on the facts that each owns a business in another state and that Democko and Samis own businesses in the states in which their families live.

[1]The same ALJ heard Jones's and Samis's cases.

The district court also rejected the constitutional challenge. The district court concluded Iowa landowners do not have a fundamental property right to hunt and the legislature had statutorily modified whatever common-law right landowners may have had to hunt on their land. In particular, it noted the legislature placed ownership of wildlife in the state and created a complex statutory scheme to regulate hunting.

This appeal followed.

## II. Standard of Review.

Iowa Code section 17A.19 (2009) governs judicial review of agency actions. A district court may grant relief if it determines the substantial rights of the party seeking relief have been prejudiced by the agency action because the agency action meets any of the several enumerated provisions of section 17A.19(10). *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d 596, 601 (Iowa 2004). On appeal, we determine whether our application of the standards set forth in chapter 17A yields the same conclusions as the district court. *E.g.*, *Watson v. Iowa Dep't of Transp.*, 829 N.W.2d 566, 568 (Iowa 2013); *ABC Disposal Sys.*, 681 N.W.2d at 601. If we reach the same conclusions as the district court, we affirm; if we reach different conclusions, we may reverse. *E.g.*, *Watson*, 829 N.W.2d at 568; *Lee v. Iowa Dep't of Transp.*, 693 N.W.2d 342, 344 (Iowa 2005).

We will uphold an agency's factual findings if, after reviewing the record as a whole, we determine they are supported by substantial evidence. *See* Iowa Code § 17A.19(10)(*f*); *see also Watson*, 829 N.W.2d at 568. We may grant relief from agency action that "is based upon a provision of law that is unconstitutional on its face or as applied." Iowa Code § 17A.19(10)(*a*). When reviewing the constitutionality of a statute, we do not give the agency deference and our review is de novo. *Gartner*

*v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 344 (Iowa 2013); *see also NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 44 (Iowa 2012).

This case also involves the agency's interpretation of certain statutory provisions of chapter 483A, in particular the terms "principal and primary residence or domicile" and "resident" under Iowa Code section 483A.1A(9) and (10) (Supp. 2009). In this regard, the level of deference we afford the agency is dependent upon whether the legislature has clearly vested the agency with the discretion to interpret the particular provision of law. If the legislature clearly vested the agency by a provision of law with the authority to interpret the provision at issue, we defer to the agency and may only reverse if the agency's interpretation is " 'irrational, illogical, or wholly unjustifiable.' " *E.g.*, *NextEra Energy Res.*, 815 N.W.2d at 37 (quoting *Doe v. Iowa Dep't of Human Servs.*, 786 N.W.2d 853, 857 (Iowa 2010)); *see also* Iowa Code § 17A.19(10)(*l*) (2009). If, however, the legislature did not clearly vest the agency by a provision of law with the authority to interpret the particular statute, then we do not defer to the agency and our review is for correction of errors at law. *E.g.*, *NextEra Energy Res.*, 815 N.W.2d at 37; *see also* Iowa Code § 17A.19(10)(*c*).

Here, we are convinced the legislature did not clearly vest the DNR by a provision of law with the authority to interpret the terms "principal and primary residence or domicile" or "resident" for purposes of chapter 483A. We base this conclusion on the fact that the legislature has provided its own definition of these terms. *See Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 423–24 (Iowa 2010) (noting an "insurmountable obstacle" to a finding that the legislature has clearly vested an agency with the authority to interpret a particular term is the

fact that the legislature has interpreted the term by providing a statutory definition); *see also Iowa Dental Ass'n v. Iowa Ins. Div.*, 831 N.W.2d 138, 143–45 (Iowa 2013) (discussing *Sherwin-Williams* and holding the legislature did not vest the insurance commissioner with interpretative authority over a particular statutory term because the legislature provided a definition of the term).  Accordingly, we review the DNR's interpretation of the statutes in this case for correction of errors at law.

**III.  Discussion.**

**A.  Statutory Framework.**  Iowa Code chapter 483A establishes a framework for the issuance of hunting and fishing licenses in Iowa.  As a general matter, chapter 483A distinguishes between residents and nonresidents for the purpose of licensure.  Residents are generally treated more favorably than nonresidents.  For example, licenses for nonresidents are more expensive than those for residents.  *See* Iowa Code § 483A.1 (Supp. 2009) (setting different fees for residents and nonresidents).  Certain residents may be eligible for lifetime licenses, whereas their nonresident counterparts are not.  *See id.* § 483A.1(*b*), (*d*) (setting the price for lifetime fishing and hunting licenses for residents over age sixty-five).  In certain instances, the number of resident licenses that may be issued each year is unlimited, while the number of nonresident licenses that may be issued each year is limited, and those nonresident licenses may be further limited by type of weapon and geographic location.  *See id.* § 483A.7(3)(*a*) (limiting the number of nonresident wild turkey licenses to 2300 annually, only 150 of which shall be valid for muzzle loading shotguns, and which shall be allocated based on wild turkey populations across the state); *id.* § 483A.8(3)(*c*)–(*d*) (limiting the number of nonresident "antlered or any sex deer" licenses to 6000 annually, only thirty-five percent of which shall be bow season

licenses, and requiring the allocation of nonresident deer hunting licenses to be based on populations of deer across the state).

Chapter 483A also distinguishes between landowners and nonlandowners. For example, nonresidents who own land in Iowa may be given preference for obtaining a nonresident-antlerless-deer license if he or she was previously unsuccessful in obtaining a "nonresident antlered or any sex deer" license. *See id.* § 483A.8(5). However, such licenses are limited to hunting on the nonresident's land and may be limited further in the event the nonresident owns the land jointly with another nonresident or resident. *See id.*

Further, under section 483A.24, owners of land may generally hunt without a license on their own lands, though this exception does not generally apply to landowners wishing to hunt deer or wild turkey. Iowa Code § 483A.24(1) (2009). To qualify as an "owner" under section 483A.24, the person must be the "owner of a farm unit who is a *resident of Iowa*" and must meet one of several additional criteria. *See id.* § 483A.24(2)(*a*)(3) (emphasis added).

Under chapter 483A, the definition of "resident" includes persons who have

> physically resided in this state as the person's *principal and primary residence or domicile* for a period of not less than ninety consecutive days immediately before applying for or purchasing a resident license, tag, or permit under this chapter and has been issued an Iowa driver's license or an Iowa nonoperator's identification card.

Iowa Code § 483A.1A(10)(*a*) (Supp. 2009) (emphasis added). This definition further provides that a person is not a resident for purposes of chapter 483A if the person is residing in the state only for the purpose of hunting, fishing, or trapping. *See id.*

Chapter 483A further defines "principal and primary residence or domicile" as "the one and only place where a person has a true, fixed, and permanent home, and to where, whenever the person is briefly and temporarily absent, the person intends to return." *Id.* § 483A.1A(9). The chapter provides a list of nonexclusive factors to consider in determining whether a person has a "principle and primary residence or domicile" in Iowa. *See id.* Such factors include "proof of place of employment, mailing address, utility records, land ownership records, vehicle registration, and address listed on the person's state and federal income tax returns." *Id.*

The DNR is generally charged with issuing licenses under chapter 483A. *Id.* § 483A.10(1); *see also* Iowa Admin. Code r. 561—1.2(4) (indicating the DNR is "the agency of the state to manage fish and wildlife resources by licensing activities impacting fish and game"). If requested, a person must submit documentation to the DNR to establish the person's principal and primary residence or domicile. Iowa Code § 483A.1(9).

### B. Substantial Evidence and "Resident."

1. *Positions of the parties.* Democko, Jones, and Samis claim the decisions of the ALJs in their respective cases were not supported by substantial evidence. In support of their argument, they quote *Julson v. Julson*, 255 Iowa 301, 305, 122 N.W.2d 329, 331 (1963), for the proposition that multiple factors go into the determination of who is an Iowa domiciliary: " '(1) a definite abandonment of the former domicile; (2) actual removal to, and physical presence in the new domicile; (3) a bona fide intention to change and to remain in the new domicile permanently or indefinitely.' " They also cite *Goodsell v. State Automobile & Casualty Underwriters*, 261 Iowa 135, 139, 153 N.W.2d 458, 460

(1967), for the proposition that the term "resident" can take on many different meanings depending on the context in which it is used. Democko, Jones, and Samis assert that under *Julson* and the record in each of their cases, the ALJs were required as a matter of law to find they were Iowa residents for purposes of chapter 483A. They assert that only an Iowa domiciliary can file an Iowa resident income tax return. They also assert that their "partial absence from Iowa and the facts that their spouses and families reside outside Iowa" are insufficient to support a finding that they are not residents.

Democko, Jones, and Samis also contend the agency's decisions were infected with an error of law in the interpretation of Iowa Code section 483A.1A(10)(*a*). They assert the agency's interpretation of this provision would have required them to be *physically* present in Iowa for ninety consecutive days in order to qualify as a resident. They assert such an interpretation would disqualify many Iowans who frequently travel from obtaining a resident hunting license. Finally, Jones and Samis assert the ALJ in their cases improperly applied a "183-day rule" and would have required them to spend more than half of each year in Iowa to qualify as residents for purposes of chapter 483A.

The DNR responds that substantial evidence supports the factual findings of the ALJs in all three cases. The DNR asserts the ALJs determined that Democko, Jones, and Samis each spends the majority of his time outside of Iowa, that they each have spouses, and in some cases children outside of Iowa, that they have businesses outside of Iowa, and that they return frequently to their out-of-Iowa homes to rejoin their families after trips. The DNR argues the evidence supporting these factual findings is sufficient to support the decisions of the agency.

On the issue of interpretation of the alleged ninety-day physicality requirement of section 483A.1A(10)(*a*), the DNR asserts neither it, the ALJs, nor the district court interpreted the statute in this manner. The DNR points to the ALJ who heard Democko's case and stated that "neither party appears to contend [the ninety-day physicality requirement] means an applicant must be physically present for that ninety-day period" and that "I agree with the [DNR], which concedes that applicants must simply establish a principal and primary residence in the state for that ninety-day timeframe, not that they must have a physical presence for that entire ninety-day period."

Finally, the DNR argues the ALJ did not apply any rule requiring Jones and Samis to spend the majority of their time in Iowa during the course of the year preceding their license applications. The DNR asserts the ALJ simply noted neither Jones nor Samis spends a majority of his time in Iowa as one factor in the determination. The DNR argues the ALJs applied the correct legal standard in determining Democko, Jones, and Samis are not residents for the purposes of chapter 483A and points to the ALJs' citations to section 483A.1A(9) and (10).

2. *Analysis.* Before we consider whether substantial evidence supports the findings of the agency in these cases, we must first set forth the proper legal standard. We recognize the concept of residency can have different meanings depending upon context. *See Goodsell*, 261 Iowa at 139, 153 N.W.2d at 460 (noting some of the many contexts in which the term "resident" has been construed, such as in cases involving taxation, venue, voting rights, school attendance, military service, and unemployment compensation benefits); *Home Sav. & Loan Ass'n v. Iowa City Inn, Inc.*, 260 Iowa 1321, 1326, 152 N.W.2d 588, 590 (1967) (explaining that "[t]he determination of whether a corporation organized

under the laws of another state is a resident of Iowa must be made within the meaning of the respective statute under consideration" and that "[t]he term is dependent upon the context of the statute in which it is used and the purpose and object to be attained"); *Pittsburgh–Des Moines Steel Co. v. Inc. Town of Clive*, 249 Iowa 1346, 1348, 91 N.W.2d 602, 603–04 (1958) (noting "the word resident, while often used synonymous with, and meaning domicile, is an elastic word with varied statutory meaning, dependent upon the context of the statute in which it is used and the purpose and object to be attained"). In particular, we have said that "[w]hen the term 'resident' is undefined in [a] statute, it becomes an ambiguous term requiring statutory construction to determine its legal meaning." *Kroblin Refrigerated Xpress, Inc. v. Iowa Ins. Guar. Ass'n*, 461 N.W.2d 175, 177–78 (Iowa 1990).

Here, however, the legislature has required that a "resident" for the purposes of chapter 483A have a "principal and primary residence or domicile" in Iowa. *See* Iowa Code § 483A.1A(10)(*a*). Further, "principal and primary residence or domicile" is "the one and only place where a person has a true, fixed, and permanent home, and to where, whenever the person is briefly and temporarily absent, the person intends to return." *Id.* § 483A.1A(9). The legislature has also provided a nonexclusive list of factors, and thus requires the use of a multifactor, totality-of-the-circumstances approach. *See id.*

Applying this statutory standard, we conclude the determinations of the agency are supported by substantial evidence. The families of Democko, Jones, and Samis reside in locations outside of Iowa, and Democko, Jones, and Samis regularly return to these locations after traveling to Iowa and to other states. There is no evidence indicating Democko, Jones, or Samis is estranged from his respective family.

Indeed, the record suggests otherwise. Further, while each maintains business and property interests in Iowa, each also maintains business and property interests outside of Iowa.

Further, we agree with the DNR that neither it nor the ALJs interpreted the ninety-day requirement of section 483A.1A(10)(*a*) in the manner claimed by Democko, Jones, and Samis. The ALJ who heard Democko's case expressly disclaimed the argument that continuous physical presence was required during this period. Though there is nothing in the ALJs' opinions in Jones's and Samis's contested cases explicitly disclaiming application of a continuous physicality requirement, there is likewise nothing in these decisions suggesting reliance upon or application of a continuous physicality requirement. Democko, Jones, and Samis cannot succeed on a claim of legal error on a ground not raised by the opposing party nor adopted by the agency in making its decisions.

Similarly, we find no indication the ALJ who heard Jones's and Samis's contested cases applied any requirement that Jones or Samis spend a majority of their time in Iowa. As noted by the DNR, each stipulated to the fact that he does not spend a majority of his time in Iowa. Further, we note the ALJ found that each does not spend a majority of his time in Iowa in addition to other factors. Thus, reading each decision as a whole, it is clear the ALJ did not regard this fact alone as determinative, but simply as one powerful factor in a determination under section 483A.1A(9) and (10). Accordingly, there is no legal error on this basis.

### C. Constitutional Issue.

1. *Positions of the parties.* Democko, Jones, and Samis point out that Iowa law distinguishes between resident and nonresident

landowners. They note that only Iowa residents may obtain the benefits granted Iowa landowners under Iowa Code section 483A.24 (2009). They allege that, in this respect, the Iowa statute differs from the statutes of several surrounding states, including Nebraska, Illinois, Kansas, Minnesota, and North Dakota. Although Democko, Jones, and Samis do not cite a specific constitutional provision, the cases they cite indicate their belief that the statutory distinction between resident and nonresident landowners is an unconstitutional impairment of privileges protected by the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution.

Democko, Jones, and Samis recognize, as they must, that the United States Supreme Court has held a state may distinguish between resident and nonresident hunters under the Privileges and Immunities Clause. *See Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 388, 98 S. Ct. 1852, 1862–63, 56 L. Ed. 2d 354, 368 (1978) (holding access by nonresidents to big-game hunting in Montana does not fall within the category of rights protected by the Privileges and Immunities Clause). However, Democko, Jones, and Samis maintain *Baldwin* does not address the question of whether a state may discriminate between resident and nonresident landowners.

Democko, Jones, and Samis contend a landowner's right to hunt the land he or she owns is part of the privileges and immunities arising out of land ownership. They argue that to not allow a nonresident landowner the same right to hunt as a resident landowner based only upon the landowner's partial absence from Iowa and the location of the landowner's family is a violation of the nonresident landowner's constitutionally protected privilege of land ownership. In support of this argument, Democko, Jones, and Samis extensively quote *Borden v.*

*Selden*, 259 Iowa 808, 814–20, 146 N.W.2d 306, 311–14 (1966). In *Borden*, this court held that, under the Privileges and Immunities Clause of the United States Constitution, the state could not discriminate between resident and nonresident landowners for purposes of granting agricultural land tax credits. *Id.* at 818–20, 146 N.W.2d at 313–14. In short, Democko, Jones, and Samis claim the distinction between resident and nonresident landowners found in section 483A.24 is constitutionally impermissible under the framework presented in *Borden.*

Democko, Jones, and Samis also rely upon *State v. Ward*, 170 Iowa 185, 152 N.W. 501 (1915). In *Ward*, a landowner was prosecuted for illegally killing a deer, which at the time was eating fodder. *Id.* at 187–88, 152 N.W. at 501–02. Prior to the time the landowner killed the deer, a herd of deer had repeatedly damaged his crops. *Id.* at 186–87, 152 N.W. at 501. We held that, under the particular facts of the case, the landowner had the right to kill the deer to protect his property. *Id.* at 189, 152 N.W. at 502–03. Democko, Jones, and Samis seek to extend *Ward* to support a right to kill deer outside the context of property protection.

The DNR responds that an Iowa landowner has no property right to hunt on his or her land. The DNR relies heavily on *Baldwin* as well as *Minnesota ex rel. Hatch v. Hoeven*, 456 F.3d 826 (8th Cir. 2006), in asserting chapter 483A does not improperly distinguish between resident and nonresident landowners. It asserts that while the right to hunt on one's own land may have existed at common law, the legislature has since extinguished it, and hunting no longer constitutes part of the bundle of property rights accompanying land ownership. Specifically, the DNR cites Iowa Code section 481A.2, which provides that "[t]he title and ownership of all . . . wild game, animals, and birds, including their

nests and eggs, and all other wildlife, found in the state, whether game or nongame, native or migratory . . . are hereby declared to be in the state." The DNR also cites Iowa Code section 483A.1 (Supp. 2009), which provides that "the protection and regulation" of wild animals, birds, game, and fish "is desirable for the conservation of resources of the state."

2. *Analysis.* It is clear that Iowa's licensing scheme not only distinguishes between residents and nonresidents, but that it distinguishes between landowners and nonlandowners as well. For example, section 483A.24 generally limits special hunting privileges to resident landowners or tenants. *See* Iowa Code § 483A.24(1), (3)–(4) (2009) (granting owners or tenants of land hunting privileges on their land and providing that owners and tenants must be residents, among other criteria).

As noted by one commentator, nonresident hunters have challenged allegedly discriminatory regulations on nonresident hunters since the mid-nineteenth century. Jodi A. Janecek, Hunter v. Hunter*: The Case for Discriminatory Nonresident Hunting Regulations*, 90 Marq. L. Rev. 355, 356 & n.9 (2006) (citing *McCready v. Virginia*, 94 U.S. 391, 24 L. Ed. 248 (1876) (holding a state law prohibiting nonresidents from planting oysters in a riverbed owned by the state did not violate the Privileges and Immunities Clause)). In recent years, challenges to nonresident hunting restrictions have resurfaced. *See, e.g.*, *Hoeven*, 456 F.3d at 832, 836 (rejecting challenges to North Dakota hunting regulations by nonresidents under the dormant Commerce Clause and Privileges and Immunities Clause); *Schutz v. Thorne*, 415 F.3d 1128, 1137–38 (10th Cir. 2005) (holding that Florida's regulations imposing higher licensing fees on nonresident hunters and limiting the number of

licenses available to nonresident hunters did not violate the Equal Protection Clause of the Fourteenth Amendment and that any challenge based on the dormant Commerce Clause was moot); *Conservation Force, Inc. v. Manning,* 301 F.3d 985, 993–95 (9th Cir. 2002) (concluding a cap on nonresident hunting of bull elk and antlered deer was subject to the dormant Commerce Clause). The question of state authority over wildlife and game has also recently received attention from Congress. *See, e.g., Hoeven,* 456 F.3d at 831, 833 (noting Congress passed the Reaffirmation of State Regulation of Resident and Nonresident Hunting and Fishing Act of 2005 in response to the Ninth Circuit's decision in *Conservation Force*).

The sole constitutional issue presented for our review is whether Iowa's distinction between resident and nonresident landowners for the purposes of granting special hunting privileges under section 483A.24 violates the Privileges and Immunities Clause of the United States Constitution.[2] To resolve this issue, we must first determine the proper analytical framework under the Clause. The Clause provides, "The citizens of each State shall be entitled to all Privileges and Immunities of citizens in the several States." U.S. Const. art. IV, § 2.

The United States Supreme Court has declared the Clause protects nonresidents from discrimination only with respect to "fundamental" privileges or immunities. *United Bldg. & Constr. Trades Council of*

---

[2]In a footnote, the district court noted Democko, Jones, and Samis had not explicitly raised a challenge under the privileges and immunities clause contained in article I, section 6 of the Iowa Constitution. Although the district court found it "likely" that a similar result would occur under the state constitution, the district court regarded any claim under the state constitution waived. Democko, Jones, and Samis have not challenged the ruling of the district court on appeal. As a result, there is no claim under the Iowa Constitution before us. *See, e.g., State v. Seering,* 701 N.W.2d 655, 661–62 (Iowa 2005) (holding an appellant waived certain constitutional claims previously presented to the district court by not raising them on appeal).

*Camden Cnty. & Vicinity v. Mayor of Camden*, 465 U.S. 208, 218, 104 S. Ct. 1020, 1027–28, 79 L. Ed. 2d 249, 258–59 (1984); *see also Baldwin*, 436 U.S. at 383, 98 S. Ct. at 1860, 56 L. Ed. 2d at 365 (noting the Clause only requires states to respect "those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity").  Exactly which privileges are fundamental is often a fighting issue.  In *Hoeven*, the Eighth Circuit implied certain property rights established under state law may be fundamental.  *See* 456 F.3d at 835 (looking to North Dakota law to determine "whether hunting constitutes a stick in the bundle of property rights accompanying land ownership" in North Dakota); *see also Taulman v. Hayden*, No. 05-1118-WEB, 2006 WL 2631914, at *5 (D. Kan. Sept. 13, 2006) (looking to Kansas law to determine whether hunting is a privilege protected by the Privileges and Immunities Clause).  If a fundamental privilege of property ownership is present, the next inquiry is whether the state can show sufficient justification for the discrimination.  *See Borden*, 259 Iowa at 814–15, 146 N.W.2d at 311 (noting the Clause bars discrimination against nonresidents "where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States"); *Hoeven*, 456 F.3d at 834 (stating the second step in the analysis is "whether sufficient justification exists for the discrimination"); *see also United Bldg. & Const. Trades Council*, 465 U.S. at 222, 104 S. Ct. at 1029, 79 L. Ed. 2d at 261 ("It does not preclude discrimination against citizens of other States where there is a 'substantial reason' for the difference in treatment.").  We need only address the initial inquiry.

In *Baldwin*, the United States Supreme Court held recreational hunting is not a fundamental privilege protected by the Clause.  436 U.S. at 388, 98 S. Ct. at 1863, 56 L. Ed. 2d at 368.  The Court noted "hunting

by nonresidents . . . is a recreation and a sport" and "not a means to the nonresident's livelihood." *Id.* at 388, 98 S. Ct. at 1862, 56 L. Ed. 2d at 368. The Court further noted equality in access by nonresidents to the state's big-game population was "not basic to the maintenance or well-being of the Union." *Id.* at 388, 98 S. Ct. at 1863, 56 L. Ed. 2d at 368. *Baldwin*, however, did not involve the right of a nonresident property owner to engage in hunting on his or her own property, but rather only the more general right of nonresidents to hunt within a state's borders.

We think the nub of the issue is whether, under Iowa law, an Iowa landowner has a property right to hunt on his or her property. Regardless of what might have been at common law, we conclude the legislature has extinguished any such right.

The legislature has declared that "[t]he title and ownership of *all* . . . wild game, animals, and birds, including their nests and eggs, and *all* other wildlife, found in the state, whether game or nongame, native or migratory . . . are hereby declared *to be in the state.*" Iowa Code § 481A.2 (emphasis added). The clear implication of this unqualified statute is that a landowner has no title to or interest in wildlife within the state borders, even if the wildlife is on the landowner's property. The legislature has made clear the purpose of vesting ownership in all of the state's wildlife in the state is "for the conservation of resources of the state." *Id.* § 483A.1 (Supp. 2009); *see also Metier v. Cooper Transp. Co.,* 378 N.W.2d 907, 914 (Iowa 1985) (characterizing the state's interest in wildlife as "an ownership or title in trust, to conserve natural resources for the benefit of all Iowans"). Any common-law right to hunt based on property ownership would conflict with these broad and unqualified statutory provisions. We further note the legislature has created an extensive statutory scheme regulating the manner, places, and times in

which certain species of wildlife may be taken and in what numbers. *See* Iowa Code chs. 481A–484C (2009).

We note that our approach is consistent with that of other jurisdictions who have considered the issue. In *Hoeven*, the court relied heavily upon its findings that statutes committed extensive hunting regulation to the arms of the state. 456 F.3d at 835. It further noted any discriminatory effect a state statute permitting residents, but not nonresidents, from hunting on their own land without a license only pertained to recreational hunting, not a fundamental property right. *Id.* Accordingly, the court held the state regulations did not violate the Privileges and Immunities Clause. *Id.* at 836. Largely tracking the reasoning of *Hoeven*, a federal district court came to the conclusion that Kansas statutes comprehensively regulating hunting similarly abrogated any previously existing common-law right to hunt on one's own land. *See Taulman*, 2006 WL 2631914, at *5–6. We find these authorities persuasive.

We do not see *Ward* as inconsistent with our approach. *Ward* establishes the principle that, in a criminal prosecution, property damage may serve as a justification for the killing of deer on one's own land. *See* 170 Iowa at 189, 152 N.W. at 502. We do not think *Ward* stands for or can be extended to establish the general right of a property owner to hunt wildlife on his or her own land in light of the comprehensive statutory scheme regulating hunting in this state.

Similarly, we do not think *Borden* supports the arguments of Democko, Jones, and Samis. The issue in *Borden* was whether sufficient justification existed to explain the grant of a tax credit to resident landowners but not nonresident landowners under the Privileges and Immunities Clause of the United States Constitution. 259 Iowa at 815,

146 N.W.2d at 312. First, *Borden* predated *Baldwin*. Moreover, *Borden* does not address whether a property owner has a right to hunt wildlife on his or her own land that is sufficiently fundamental to trigger the Clause's protections. Instead, it pertains to alleged justifications for unequal tax treatment.

In sum, we think *Baldwin*, *Hoeven*, and *Taulman* provide the better framework for disposition of this case. Applying this framework, we find in light of the extensive statutory scheme that landownership in Iowa is not accompanied by the right to hunt on one's own land. Therefore, the limited statutory right of resident landowners to hunt certain wildlife on their land granted by section 483A.24 does not discriminate against nonresident landowners in a manner that violates the Privileges and Immunities Clause.

## IV. Conclusion.

For the above reasons, we affirm the judgment of the district court.

**AFFIRMED.**