# IN THE COURT OF APPEALS OF IOWA

No. 17-0313
Filed February 21, 2018

**CLIFFORD S. ALLEN,**
    Petitioner-Appellant,

**vs.**

**TYSON FRESH MEATS, INC.,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.


    An employee appeals from the district court ruling affirming the worker's compensation commissioner's award of ten percent industrial disability and denial of penalty benefits. **AFFIRMED.**



    John R. Walker Jr. of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellant.

    Brian L. Yung of Klass Law Firm, L.L.P., Sioux City, for appellee.


    Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

Clifford Allen appeals from the district court ruling affirming the worker's compensation commissioner's award of ten percent industrial disability and the denial of penalty benefits. Allen maintains the district court applied the incorrect standards when reviewing the commissioner's interpretation of Iowa Administrative Code rule 876-4.2(86) and the commissioner's award of ten percent industrial disability.

*Penalty Benefits.* Allen maintains the commissioner erred in refusing to consider his claim for penalty benefits.[1] In doing so, the commissioner interpreted rule 876-4.2(86) as requiring the claimant to plead entitlement to penalty benefits before such benefits may be awarded.[2] In its review of the commissioner's interpretation of the rule, the district court considered whether it was an "irrational, illogical, or wholly unjustifiable" interpretation. *See* Iowa Code § 17A.19(10)(*l*) ("The court shall reverse, modify, or grant other appropriate relief from agency action . . . if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action [was] . . . *l*: Based upon an irrational, illogical, or wholly unjustifiable interpretation of a provision of law whose interpretation has clearly been vested by a provision of law in the discretion of the

---

[1] Penalty benefits are controlled by Iowa Code section 86.13(4)(a) (2011), which provides:
> If a denial, a delay in payment, or a termination of benefits occurs without reasonable or probable cause or excuse known to the employer or insurance carrier at the time of the denial, delay in payment, or termination of benefits, the workers' compensation commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were denied, delayed, or terminated without reasonable or probable cause or excuse.

[2] Allen does not dispute that he failed to plead an entitlement to penalty benefits but contends his mention of the issue in an answer to interrogatory should be sufficient.

agency."). On appeal, Allen maintains the district court employed the wrong standard of review.

"[T]he level of deference we afford the agency is dependent upon whether the legislature has clearly vested the agency with the decision to interpret the particular provision of law." *Democko v. Iowa Dep't of Natural Resources*, 840 N.W.2d 281, 287 (Iowa 2013). In cases where the legislature clearly vested the agency with the authority to interpret the provision at issue, "we defer to the agency and may only reverse if the agency's interpretation is 'irrational, illogical, or wholly unjustifiable.'" *Id.* (citing Iowa Code § 17A.19(10)(*l*)). However, if the legislature did not clearly vest the agency with the authority to interpret the particular statute, "then we do not defer to the agency and our review is for correction of errors at law." *Id.* (citing Iowa Code § 17A.19(10)(c), requiring the court to "reverse, modify or grant other appropriate relief from agency action . . . if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action [was] . . . c: Based upon an erroneous interpretation of a provision of law whose interpretation has not been clearly vested by a provision of law in the discretion of the agency").

We need not determine if the agency has been vested with the authority to interpret rule 876-4.2(86) because even if we apply the less deferential review—correction of errors at law—we cannot say the district court was wrong to affirm the commissioner's interpretation.

Rule 876-4.2(86) states, in pertinent part:

> Entitlement to denial or delay benefits provided in Iowa Code section 86.13 *shall be pled*, and if pled, discovery shall be limited to matters discoverable in the absence of such pleading unless it is

bifurcated. The claimant may bifurcate the denial or delay issue by filing and serving a notice of bifurcation at any time before a case is assigned for hearing, in which case discovery on that issue may proceed only after the final decision of the agency on all other issues.

(Emphasis added.)

The commissioner interpreted the word "shall" to mean a necessity or a requirement, determining that Allen's failure to plead entitlement to penalty benefits defeated any claim to them. Statutory interpretation supports this—and only this—reading. *See* Iowa Code § 4.1(3)(1) (providing the word "shall," in statutes enacted after July 1971, "imposes a duty"); *In re Det. of Fowler*, 784 N.W.2d 184, 187 (Iowa 2010) ("[T]he word 'shall' generally connotes a mandatory duty."); *Berent v. City of Iowa City*, 738 N.W.2d 193, 209 (Iowa 2007) ("The term 'shall' is mandatory."); *State v. Klawonn*, 609 N.W.2d 515, 521–22 (Iowa 2000) ("The word 'may' can mean 'shall,' but the word 'shall' does not mean 'may.'"). Allen claims this interpretation is in error because it "is completely at odds with the primary purpose of the workers' compensation statute"—to benefit the worker. But there is no need to consider the purpose of the statute or rule where, as here, the language is unambiguous. *See McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010) ("We do not search for legislative intent beyond the express language of a statute when that language is plain and the meaning is clear. . . . We only apply the rules of statutory construction when the statutory terms are ambiguous.").

Because the commissioner's interpretation of rule 876-4.2(86) is neither an error at law nor irrational, illogical, or wholly unjustifiable, we agree with the district court's conclusion that the interpretation must be affirmed.

*Industrial Disability.* Allen maintains the commissioner's award of ten percent industrial disability was "[b]ased upon an irrational, illogical, or wholly unjustifiable application of law to fact that has been clearly vested by a provision of law in the discretion of the agency." *See* Iowa Code § 17A.19(10)(m); *see also Larson Mfg. Co., Inc. v. Thorson*, 763 N.W.2d 842, 856–57 (Iowa 2009) (stating the claim the commissioner erred in determining a claimant's industrial disability "is a mixed question of law and fact, as the determination of the industrial disability required the commissioner to apply establish law (the factors considered in determining whether an industrial disability occurred) to the facts" and reviewing the decision pursuant to section 17A.19(10)(m)). He maintains the district court erred when it affirmed the commissioner's award after applying the incorrect standard of review—having found the industrial disability was supported "by substantial evidence." *See* Iowa Code § 17A.19(10)(f).

We agree with Allen that the court reviewing the commissioner's award of industrial disability is to consider whether it is based on an irrational, illogical, or wholly unjustifiable application of law to fact. We do so as we consider whether the commissioner's award of an industrial disability that was less than the functional impairment rating supplied by a credible doctor was irrational and illogical.

Allen concedes that the functional impairment rating—which Dr. Delbridge assigned at seven percent of Allen's body as a whole due to his knee injury and five percent impairment of the spine, for a combined twelve percent impairment of the body as a whole—is only one of the factors the commissioner is to consider when deciding industrial disability. *See Larson*, 763 N.W.2d at 857 ("An

assessment of industrial disability implicates 'all the factors that bear on [the claimant's] *actual employability*.'  These factors include the claimant's 'age, education, qualification, experience, and inability due to injury to engage in the employment for which the claimant is fitted.'" (alteration in original) (citations omitted)); *see also Bearce v. FMC Corp.*, 465 N.W.2d 531, 535 (Iowa 1991) ("The functional disability is but one of a number of factors the commission must consider in determining industrial disability.").  Still, Allen maintains his "advanced age" of sixty-one, his "relatively limited education," and "the fact that for many years prior to the hearing his work was limited to heavy manual labor" support his claim that his industrial disability is significantly greater than the twelve percent impairment.

But here, Allen had no loss of job or earnings due to his injury.  In fact, he continued to work in the same job, for the same company, without having missed any days due to injury[3] at the time of the hearing.  While such a finding does not preclude Allen from an award of industrial disability, it cannot be overlooked in determining how much his injuries affect his employability.  *See, e.g., Larson*, 763 N.W.2d at 857 (noting the fact that claimant's "continued full-time work including some overtime" and had "a history of increased actual earning after the date" of injury "certainly mitigated the extent of industrial disability").  Additionally, while Allen argues his education was relatively limited, we take a different view, noting Allen had completed high school, achieved an associate of arts degree from a two-year college, obtained a welding degree and a degree in machine maintenance, and at one time apparently held a valid license to sell real estate.  Allen had worked

---

[3] Allen testified he had missed one day of work for an unrelated family reason.

at his position with Tyson—which required manual labor—for some time, but Allen's testimony makes clear he preferred that position to others; Allen testified he had "the best job in town right now, and [he didn't] want to lose it." In other words, it does not appear he took the job because of a lack of other options.

Under these facts, we cannot say the commissioner's decision to award a ten percent industrial disability—lower than Allen's functional impairment—was irrational or illogical. We agree with the district court that the award should be affirmed.

**AFFIRMED.**