# IN THE COURT OF APPEALS OF IOWA

No. 18-0087
Filed February 6, 2019

**RUSSELL M. CARTER,**
        Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF NATURAL RESOURCES,**
        Defendant-Appellee.

_____

        Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


        Plaintiff appeals the district court decision on his petition for declaratory judgment finding Iowa Code section 483A.24 (2016) is not unconstitutional. **AFFIRMED.**


        Stephen H. Locher of Belin McCormick, P.C., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and David M. Ranscht, Assistant Attorney General, for appellee.


        Heard by Tabor, P.J., Bower, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BOWER, Judge.**

Russell Carter appeals the district court decision on his petition for declaratory judgment finding Iowa Code section 483A.24 (2016) is not unconstitutional. We find Carter, as a nonresident landowner, does not have an inalienable right under the Iowa Constitution to hunt antlered deer on his property and the statute does not violate his equal protection rights. We affirm the district court.

### I.      Background Facts & Proceedings

"Iowa Code chapter 483A establishes a framework for the issuance of hunting and fishing licenses in Iowa." *Democko v. Iowa Dep't of Nat. Res.*, 840 N.W.2d 281, 287 (Iowa 2013). "As a general matter, chapter 483A distinguishes between residents and nonresidents for the purpose of licensure. Residents are generally treated more favorably than nonresidents." *Id.*

Section 483A.24(1) provides:

> Owners or tenants of land, and their minor children, may hunt, fish or trap upon such lands and may shoot by lawful means ground squirrels, gophers, or woodchucks upon adjacent roads without securing a license so to do; except, special licenses to hunt deer and wild turkey shall be required of owners and tenants . . . .

The term "owner" is defined as "an owner of a farm unit who is a resident of Iowa . . . ." Iowa Code § 483A.24(2)(a)(3). The term "resident" includes a person whose "principal and primary residence or domicile" is in Iowa. *See id.* § 483A.1A(10)(a).

An owner of a farm unit may receive upon application "two deer hunting licenses, one antlered or any sex deer hunting license and one antlerless deer only deer hunting license" without fee and "valid only for use on the farm unit for which

the applicant applies." *Id.* § 483A.24(2)(c). In addition, the owner of a farm unit "may purchase a deer hunting license for any option offered to paying deer hunting licenses." *Id.* § 483A.24(2)(d). An owner "may also purchase two additional antlerless deer hunting licenses which are valid only on the farm unit." *Id.*

A nonresident who owns land in Iowa may apply for an annual nonresident antlered deer hunting license.[1] *Id.* § 483A.8(5). Each year, the Iowa Natural Resource Commission makes antlered or any sex deer hunting licenses available to 6000 nonresidents. *Id.* § 483A.8(3)(c). These deer hunting licenses are distributed by a drawing, with preference points given under certain circumstances. *Id.* § 483A.8(3)(e). If a nonresident landowner does not receive a nonresident antlered deer hunting license through the drawing, "the landowner shall be given preference for one of the antlerless deer only nonresident deer hunting licenses." *Id.* § 483A.8(5). The number of nonresident antlerless deer hunting licenses available varies each year. *Id.* § 483A.8(3)(c). These licenses "shall be valid to hunt on the nonresident's land only." *Id.* § 483A.8(5).

This statutory framework was in place when Carter purchased 650 acres of land in Decatur County. The title to the property is in the name of Ducks and Bucks, LLC, which is owned by Carter and his two sons. Carter bought the property for the purpose of hunting deer and other wildlife. Although Carter owns land in Iowa, he does not live in Iowa and is a legal resident of another state. As a nonresident of Iowa, Carter does not meet the definition of an "owner" under section 483A.24(2)(a)(3). Over a six year period, Carter received a nonresident

---

[1] There are separate statutory provisions for nonresidents who do not own land in Iowa. *See* Iowa Code § 483A.8(3).

antlered deer hunting license each year through the drawing or lottery system, except for two years, when he received a nonresident antlerless deer hunting license. Thus, Carter has been able to hunt deer on his property every year but in some years was not able to hunt antlered deer, sometimes known as trophy bucks.

On September 27, 2016, Carter filed a petition for a declaratory order with the Iowa Department of Natural Resources (DNR), requesting a ruling establishing him as an "owner" for purposes of section 483A.24(2)(a)(3). In the alternative, he sought a ruling stating the failure to treat him as an "owner" violated his inalienable rights and his equal protection rights under the Iowa Constitution. The DNR did not respond to Carter's petition within sixty days, and it was therefore deemed to be denied. Carter then filed a petition for judicial review, as permitted by section 17A.19(1) ("If a declaratory order has not been rendered within sixty days after the filing of a petition therefor under section 17A.9 . . . any administrative remedy available under section 17A.9 shall be deemed inadequate or exhausted.")

The district court found the operation of section 483A.24 did not violate Carter's constitutional rights. The court found Carter did not have an inalienable right to hunt deer on his own property. The court also found the State's limitation on nonresident landowners' hunting licenses was a reasonable use of the State's police power. The court additionally found the State's disparate treatment of resident and nonresident landowners in regard to hunting licenses did not violate the equal protection clause because there was a rational basis for making the distinction. Carter appeals the district court's decision.

## II. Standard of Review

"We review constitutional challenges to statutes de novo." *Honomichl v. Valley View Swine, LLC*, 914 N.W.2d 223, 230 (Iowa 2018). In our review, "we independently evaluate the totality of the circumstances." *Hensler v. City of Davenport*, 790 N.W.2d 569, 578 (Iowa 2010). "We presume statutes are constitutional, and the party challenging the statute 'must prove the unconstitutionality beyond a reasonable doubt.'" *Honomichl*, 914 N.W.2d at 230 (citation omitted).

## III. Inalienable Rights

Article I, section 1 of the Iowa Constitution provides:

> All men and women are, by nature, free and equal, and have certain inalienable rights—among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness.

"These rights include the 'right to acquire, possess, and enjoy property.'" *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168, 176 (Iowa 2004) (citation omitted). "[I]n determining whether [a] challenged statute violates article I, section 1 of the Iowa Constitution, we must determine (1) whether the right asserted by the plaintiffs is protected by this clause, and (2) whether [the] section [at issue] is a reasonable exercise of the state's police power." *Id.*

Carter claims this constitutional provision gives him an inalienable right to hunt antlered deer on his own property. He states section 483A.24 is unconstitutional because it limits his ability to obtain a hunting license for antlered deer.

In *Democko*, plaintiffs claimed section 483A.24 was unconstitutional under the Privileges and Immunities Clause of the United States Constitution due to the statutory distinction between resident and nonresident landowners. 840 N.W.2d at 291. Similar to the present case, plaintiffs argued "to not allow a nonresident landowner the same right to hunt as a resident landowner based only upon the landowner's partial absence from Iowa and the location of the landowner's family is a violation of the nonresident landowner's constitutionally protected privilege of land ownership." *Id.*

The Iowa Supreme Court found, "We think the nub of the issue is whether, under Iowa law, an Iowa landowner has a property right to hunt on his or her property. Regardless of what might have been at common law, we conclude the legislature has extinguished any such right." *Id.* at 293. The court further stated:

> The legislature has declared that "[t]he title and ownership of *all* . . . wild game, animals, and birds, including their nests and eggs, and *all* other wildlife, found in the state, whether game or nongame, native or migratory . . . are hereby declared *to be in the state*." The clear implication of this unqualified statute is that a landowner has no title to or interest in wildlife within the state borders, even if the wildlife is on the landowner's property. The legislature has made clear the purpose of vesting ownership in all of the state's wildlife in the state is "for the conservation of resources of the state." Any common-law right to hunt based on property ownership would conflict with these broad and unqualified statutory provisions. We further note the legislature has created an extensive statutory scheme regulating the manner, places, and times in which certain species of wildlife may be taken and in what numbers.

*Id.* at 293–94 (citations omitted). The court concluded, "in light of the extensive statutory scheme that landownership in Iowa is not accompanied by the right to hunt on one's own land." *Id.* at 294. The court determined section 483A.24 did not violate plaintiffs' constitutional rights. *Id.*

Our inalienable rights clause "secure[s] to the people of Iowa common law rights that pre-existed Iowa's Constitution." *Atwood v. Vilsack*, 725 N.W.2d 641, 651 (Iowa 2006). While the plaintiffs in *Democko* did not challenge section 483A.24 in regard to the Iowa Constitution, we find the case is applicable insofar as it provides, "Regardless of what might have been at common law, we conclude the legislature has extinguished any such right." 840 N.W.2d at 293. Because the rights recognized by article I, section 1 of the Iowa Constitution arise from common law rights, the ruling in *Democko* stating an Iowa landowner does not have a common law right to hunt on his or her own property forecloses Carter's claim he has an inalienable right to hunt on his property. *See id.* The Iowa Supreme Court has determined, "landownership in Iowa is not accompanied by the right to hunt on one's own land." *Id.* at 294. We therefore determine the right asserted by Carter is not protected by the inalienable rights clause. *See Gacke*, 684 N.W.2d at 176.

In *Democko*, the court found the Iowa legislature, through an extensive statutory scheme, had extinguished a landowner's common law right to hunt on the landowner's own property to the extent such a right may have existed under the common law. 840 N.W.2d at 293. We note even if a nonresident landowner had an inalienable right to hunt antlered deer on the landowner's property, such a right would be "subject to reasonable regulation by the state in the exercise of its police power." *Gacke*, 684 N.W.2d at 176; *see also City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 352 (Iowa 2015) ("[E]ven if the plaintiff's asserted interest is within the scope of the inalienable rights clause, the rights guaranteed by the

provision are subject to reasonable regulation by the state in the exercise of its police power.").

"Police power refers to the legislature's broad, inherent power to pass laws that promote the public health, safety, and welfare." *Honomichl*, 914 N.W.2d at 235 (quoting *Gravert v. Nebergall*, 539 N.W.2d 184, 186 (Iowa 1995)). "Whether the exercise of the police powers is proper depends on whether the collective benefit outweighs the specific restraint of individual liberty." *Gibb v. Hansen*, 286 N.W.2d 180, 186 (Iowa 1979). Reasonable regulations are those which are not capricious, arbitrary, or unreasonable, and which have some relation to the general welfare. *Pierce v. La Porte City*, 146 N.W.2d 907, 910 (Iowa 1966). In reference to the inalienable rights clause, we consider whether a statute "is a reasonable exercise of the state's police power." *Gacke*, 684 N.W.2d at 176.

The State has a substantial interest "in regulating its wildlife and the hunting thereof." *State v. Keehner*, 425 N.W.2d 41, 45 (Iowa 1988); *see also Metier v. Cooper Transp. Co.*, 378 N.W.2d 907, 914 (Iowa 1985) (noting "the substantial interest of the State, on behalf of its citizens, in conserving and protecting wild animals"). The State has declared to itself the title and ownership "of all wild game, animals, and birds." Iowa Code § 481A.2. We conclude it is within the State's police power to manage and conserve the wildlife in the State.

Because the State has ownership of all the wild animals, including deer, in Iowa, it follows the State may properly regulate deer hunting. *See id.* § 483A.1 (providing a person may not hunt wild animals, including deer, without first obtaining a hunting license). In a case discussing the inalienable rights clause of the Wisconsin Constitution, the Wisconsin Supreme Court stated:

> We believe it has never been seriously denied (and it is now certainly too late to deny) that the state has the right, in the exercise of its police power, to make all reasonable regulations for the preservation of fish and game within its limits. It may ordain closed seasons; it may prescribe the manner of taking, the times of taking, and the amount to be taken within a given time, as it may deem best for the purpose of preserving and perpetuating the general stock. . . . The modes in which the state may limit the amount to be legally taken are various.

*State v. Nergaard*, 102 N.W. 899, 901 (Wis. 1905).

While the State could have enacted a different regulatory system, as proposed by Carter, this does not make the present regulatory system for deer hunting licenses unreasonable. *See City of Ames v. Gerbracht*, 189 N.W. 729, 733 (Iowa 1922) (discussing the reasonableness of an ordinance and stating "under its power to regulate, there are undoubted numerous requirements that may be lawfully prescribed by the city council, pertaining to the manner in which the business is conducted"). In discussing Wyoming statutes which reserved a quota a wild animals for resident hunters, the Tenth Circuit Court of Appeals noted the statues "encourage[d] residents to maintain their residency" and support state conservation programs, helped "preserve the gender balance needed to maintain herd sizes," and provided "an economic boost." *Schutz v. Thorne*, 415 F.3d 1128, 1135 (10th Cir. 2005).

We conclude the present system is not capricious, arbitrary, or unreasonable, and it relates to the State's substantial interest "in regulating its wildlife and the hunting thereof." *See Keehner*, 425 N.W.2d at 45. The statute limits the number of nonresidential hunting licenses for antlered deer to 6000 each year. If nonresidential landowners were able to obtain an antlered deer hunting license every year, the number of antlered deer in the State would be reduced.

Like the Wyoming statute in *Schutz*, the Iowa statute "help[s] preserve gender balance needed to maintain herd sizes." 415 F.3d at 1135. We find section 483A.24 is a reasonable exercise of the State's police power.

We conclude the district court properly concluded section 483A.24 does not violate Carter's inalienable rights found in Article I, section 1 of the Iowa Constitution.

### IV. Equal Protection Rights

Article I, section 6 of the Iowa Constitution provides:

> All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.

Under the equal protection clause, "all persons similarly situated should be treated alike." *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 7 (Iowa 2004) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

"Unless a suspect class or a fundamental right is at issue, equal protection claims are reviewed under the rational basis test." *King v. State*, 818 N.W.2d 1, 25 (Iowa 2012). "The rational basis test defers to the legislature's prerogative to make policy decisions by requiring only a plausible policy justification, mere rationality of the facts underlying the decision and, again, a merely rational relationship between the classification and the policy justification." *Varnum v. Brien*, 763 N.W.2d 862, 879 (Iowa 2009). "Under the rational basis test, '[t]he plaintiff has the heavy burden of showing the statute unconstitutional and must negate every reasonable basis upon which the classification may be sustained.'" *Id.* (citation omitted). We consider "whether the classifications drawn in a statute

are reasonable in light of its purpose." *Racing Ass'n*, 675 N.W.2d at 7 (citation omitted).

Carter claims the differential treatment of resident and nonresident landowners in section 483A.24 is not rationally related to any legitimate government interest. He asserts the State should show the impact of the statute on the Iowa deer population. He states there is no relationship between the discriminatory treatment of resident and nonresident landowners and the putative purpose of section 483A.24.

A similar argument was raised in regard to the federal equal protection clause in *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 389–91 (1978), which considered Montana elk hunting licensing statutes as they pertained to resident and nonresident hunters. The United States Supreme Court found the distinctions drawn between residents and nonresidents were "rational, and not invidious, and therefore not violative of the Equal Protection Clause." *Baldwin*, 436 U.S. at 389. The court noted, "The legislative choice was an economic means not unreasonably related to the preservation of a finite resource and a substantial regulatory interest of the State." *Id.* at 390. The court concluded, "Protection of the wild life of the State is peculiarly within the police power, and the State has great latitude in determining what means are appropriate for its protection." *Id.* at 391 (citation omitted).

Carter brought his claim under the Iowa Constitution's equal protection clause, which he claims is broader in scope than the federal Constitution. He recognizes, however, "the framework used to analyze a constitutional challenge under the equal protection clause of the Iowa Constitution is similar to that applied

under the federal constitution." While *Baldwin* is not a binding precedent for purposes of interpreting the equal protection clause of the Iowa Constitution, we may "look to [it] for 'such light and guidance as [it] may afford.'" *See Sioux City*, 862 N.W.2d at 340 (citation omitted).

Under the rational basis test, the legislature may make classifications which are "rationally related to a legitimate governmental interest." *King*, 818 N.W.2d at 27 (citation omitted). We presume these classifications are valid "unless the relationship between the classification and the purpose behind it is so weak the classification must be viewed as arbitrary or capricious." *Id.* at 28 (citation omitted). "Nothing in the law suggests the existence of supporting 'objective data' is necessary in order for a classification to withstand an equal protection challenge" because a classification will be upheld "if *any* state of facts can be conceived to justify it." *Norland v. Grinnell Mut. Reins. Co.*, 578 N.W.2d 239, 242 (Iowa 1998).

The State may reasonably differentiate between types of licenses—antlered or antlerless deer, and differentiate between types of licensees—residential and nonresidential, if these classifications are rationally related to a legitimate government interest. *See King*, 818 N.W.2d at 27. We have noted "the substantial interest of the State, on behalf of its citizens, in conserving and protecting wild animals." *Metier*, 378 N.W.2d at 914. We find there is a rational basis for the Iowa legislature to distinguish between residential and nonresidential landowners. As discussed in relation to the inalienable rights clause, the Iowa statute is rational because it "help[s] preserve gender balance needed to maintain herd sizes." *See Schutz*, 415 F.3d at 1135.

We conclude section 483A.24 is a valid exercise of the State's interest "in regulating its wildlife and the hunting thereof." *See Keehner*, 425 N.W.2d at 45. We find the district court properly concluded section 483A.24 does not violate Carter's equal protection rights found in article I, section 6 of the Iowa Constitution.

We affirm the decision of the district court.

**AFFIRMED.**