# IN THE SUPREME COURT OF IOWA

No. 22–0779

Submitted March 20, 2024—Filed June 28, 2024

**NATHAN DANIEL OLSEN,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Thomas G. Reidel, Judge.

The defendant seeks further review of the court of appeals decision that affirmed the district court's dismissal of his application to modify sex offender registration requirements. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

McDermott, J., delivered the opinion of the court, in which Waterman, Mansfield, and Oxley, JJ., joined. McDonald, J., filed a dissenting opinion, in which Christensen, C.J., and May, J., joined.

Philip B. Mears of Mears Law Office, Iowa City, for appellant.

Brenna Bird, Attorney General, and Thomas Ogden, Assistant Attorney General, for appellee.

**McDERMOTT, Justice.**

A person convicted of a sex offense must register as a sex offender if they live, work, or attend school in Iowa. Registered sex offenders are subject to many restrictions on their freedom, including limitations on where and with whom they may live. Nathan Olsen was convicted of a sex offense in Wisconsin in 2009, moved to Iowa for several years, and now lives in Illinois. Because he neither lives, works, nor attends school in Iowa, he isn't required to register as a sex offender here. But he wishes to move back to Iowa and, if he did so, he would be required to register here again. He filed an application in the district court asking the court to modify his status as a sex offender and the registration requirements that would apply to him in Iowa *before* he moves back so he could immediately live with his partner and her children in Iowa—a living arrangement otherwise prohibited for a registered sex offender.

But the modification statute allows for modification only if a person lives, works, or attends school in Iowa, among other criteria. Olsen presently meets all the other criteria for modification. The district court dismissed his application for modification and the court of appeals affirmed the dismissal. We granted Olsen's application for further review. In this case, we must decide whether the statute permitting only those who currently live, work, or attend school in Iowa the opportunity to modify their sex offender registration requirements unlawfully discriminates against nonresidents in violation of the Privileges and Immunities Clauses of the Iowa and United States Constitutions.

I.

In August 2009, Olsen pleaded no contest in Wisconsin to second-degree sexual assault of a minor and several related misdemeanors. He was eighteen years old at the time. The court granted a deferred judgment and placed him on probation. He wasn't required to register as a sex offender under Wisconsin law,

which exempts those receiving deferred judgments from the requirement. Olsen moved to Iowa later that year. Iowa law does not exempt those receiving deferred judgments from the sex offender registry requirement. Based on the classification of his offense, Olsen was required to register as a sex offender in Iowa for ten years. *See* Iowa Code § 692A.106(1) (2021).

The obligations imposed on registered sex offenders are many. Among other things, registrants must appear in person to register with the sheriff of each county where they reside, work, or attend school. *Id.* § 692A.104(1). If registrants change residence, employment, or school, they must notify the county sheriff within five business days. *Id.* § 692A.104(2). If they move to, work in, or attend school in a new jurisdiction, they must notify the sheriff in the county of their principal residence of their presence in the new jurisdiction. *Id.* § 692A.104(5). If they plan to leave the county for more than five days, they must notify the sheriff in the county of their principal residence of their intentions and provide the location and length of time that they'll be staying out of the county. *Id.* § 692A.105. They are required to update the sheriff within five days of any changes in their internet identifiers. *Id.* §§ 692A.101(23)(*a*), .104(3). Every three months, they must appear in person in the county where they were initially required to register to verify the location of their residence, employment, and school. *Id.* § 692A.108(1)(*c*). They must also pay an annual registration fee of $25. *Id.* § 692A.110(1).

If a registrant's offense involved a minor, the offender is subject to an assortment of exclusion zones and employment restrictions. The offender may not be present on or loiter within 300 feet of the property of an elementary or secondary school. *Id.* § 692A.113(1)(*a*)–(*b*). The offender likewise may not be present on or loiter within 300 feet of a public library without the prior written permission of the library's administrator. *Id.* § 692A.113(1)(*f*)–(*g*). The offender may not

be present on or loiter within 300 feet of a childcare facility without prior written permission from the facility administrator. *Id.* § 692A.113(1)(*d*)–(*e*). The offender may not loiter on the premises of or work at any facility for dependent adults or be present at an event that provides services or programming for dependent adults. *Id.* § 692A.115(1). The offender may not be present on or loiter within 300 feet of any place intended primarily for the use of minors, such as a public playground, public children's play area, recreational or sport-related activity area when in use by minors, public swimming pool when in use by minors, or public beach when in use by minors. *Id.* § 692A.113(1)(*h*). And the offender may not reside within 2,000 feet of a school or childcare facility. *Id.* § 692A.114(2).

An offender's registration information is publicized on Iowa's sex offender registry website, which is "searchable by name, county, city, zip code, and geographic radius." *Id.* § 692A.121(1). The website also publishes the offender's full name, photographs, date of birth, home address, and physical description, including scars, marks, and tattoos. *Id.* § 692A.121(2)(*b*)(1)(a)–(e). The website provides the statutory citation and text of the offense and states whether the offender is subject to residence restrictions, employment restrictions, and exclusion zones. *Id.* § 692A.121(2)(*b*)(1)(f)–(h). Members of the public may also contact the county sheriff's office and request additional information about the offender. *Id.* § 692A.121(5)(*a*). A member of the public that contacts the sheriff's office and provides the offender's date of birth (publicized on the sex offender registry website) may request a list of schools the offender has attended, the names and addresses of current and former employers, locations and dates of any temporary lodging, and vehicle information. *Id.* § 692A.121(5)(*a*)–(*b*).

Olsen had fulfilled his registration duties until being sentenced in 2017 for failing to report his purchase of a new vehicle within five business days as required under Iowa Code § 692A.104(3), an aggravated misdemeanor. As a

result of this conviction, ten years were added to his registration term, pushing his registration requirement to twenty years. *See id.* § 692A.106(4). Around the same time, Olsen served four months in prison for an unrelated theft conviction. The four months he served in prison do not count toward his registration period. *See id.* § 692A.107(1).

After Olsen's release from prison, he moved to Illinois, where he currently resides. He was never required to register as a sex offender in Illinois. A sex offender who moves out of Iowa is placed on "inactive status" and no longer required to register unless the offender moves back to the state. *Id.* § 692A.106(7).

Olsen seeks to move back to Iowa. He filed an application to modify his requirement to register as a sex offender in Iowa in August 2021. The application states his desire "to return to Iowa, . . . specifically Scott County, once he is no longer required to register in Iowa."

Olsen lives with his partner, Hailey, and their five children from prior relationships. The father of Hailey's three children and the mother of Olsen's two children both live in eastern Iowa. Olsen states that moving to Iowa would strengthen their relationships with relatives here, and these relatives could also assist Hailey during his frequent work travels as a truck driver. Because he and Hailey are not married, if his family were to move to Iowa without Olsen first receiving a modification, he would not be able to live with them because of his sex offender status, as Iowa law prohibits a person who is required to register as a sex offender from having custody or control over a child or minor unless the person is the child's parent or legal guardian. *See id.* § 726.6(1)(*h*). Modification of his registration requirement would also help Olsen expand his trucking business to customers within Iowa. Olsen contends that if he were to move to Iowa and then file an application for modification with the district court, he would

need to live apart from his family for six months or more while awaiting a final determination on his application.

Olsen has already completed preliminary steps toward his modification goal. The Seventh Judicial District Department of Correctional Services assessed Olsen and filed a report in February 2021 stating that Olsen satisfied the five-year minimum threshold in September 2014 (before he moved to Illinois), has completed all sex offender treatment programs required of him, and is considered a "low risk to reoffend" based on three validated risk assessments approved by the department of corrections (the STATIC-99R, ISORA, and STABLE 2007).

The State resisted Olsen's application, asserting that he failed to state a viable claim for relief because Iowa Code § 692A.128(3) provides that an application for modification "shall be filed in the sex offender's county of principal residence." Because Olsen does not live, work, or attend school in Iowa, the State asserted that he does not have a principal residence here and thus cannot apply for modification. *See id.* § 692A.101(20) (defining "principal residence" for a sex offender as where the person lives, works, or attends school in the state). The State further argued that Olsen is ineligible for modification because an application may not be granted until at least five years after the offender is required to register, *see id.* § 692A.128(2)(*a*), and Olsen's additional ten-year requirement restarted the clock on his five-year minimum.

Olsen argued that the residency requirement in § 692A.128(3) violates the Privileges and Immunities Clauses of the Iowa and United States Constitutions because it unlawfully discriminates against out-of-state residents. He also argued that the five-year period before an offender becomes eligible for modification does not restart when time is added to an initial registration requirement.

The district court denied Olsen's application. The court concluded that because Olsen is not an Iowa resident and thus not subject to any ongoing

registration requirements, it lacked jurisdiction to enter any modification. If Olsen wished to have his registration requirements modified, the court stated, he would first need to move to Iowa, register, and then file an application for modification. In grounding its holding on a jurisdictional defect, the district court did not reach Olsen's argument under the Privileges and Immunities Clauses.

Olsen appealed. We transferred the case to the court of appeals. It affirmed the district court's ruling, concluding that Olsen's claim was not ripe for adjudication because his application sought to modify what it deemed a "hypothetical" registration requirement predicated on his potential future return to Iowa. Olsen sought further review, which we granted.

## II.

Olsen argues that permitting Iowa residents the right to modify sex offender registration requirements while denying out-of-state residents that same right violates the Privileges and Immunities Clauses of both the Iowa and United States Constitutions. Iowa law requires that an application for modification "be filed in the sex offender's county of principal residence." *Id.* § 692A.128(3). A sex offender's "principal residence" includes "[t]he residence of the offender, if the offender has only one residence in this state" or "[t]he place of employment or attendance as a student, or both, if the sex offender does not have a residence in this state." *Id.* § 692A.101(20). A sex offender must file an application to modify registration requirements in district court. *Id.* § 692A.128(1). Olsen argues that the statute's residency restriction—which provides *him* no opportunity to file for modification in an Iowa district court—unlawfully discriminates against out-of-state residents.

The United States Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States," U.S. Const. art. IV, § 2, cl. 1, and that "[n]o State shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the United States," *id.* amend. XIV, § 1. Olsen asks for the same relief under the Iowa Constitution. Because neither party has requested that we analyze Olsen's claim under the Iowa Constitution differently than the United States Constitution, we will apply the federal analysis. *See State v. Dudley*, 766 N.W.2d 606, 624 (Iowa 2009).

The Privileges and Immunities Clause in the Federal Constitution was designed to "plac[e] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *McBurney v. Young*, 569 U.S. 221, 226 (2013) (quoting *Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 296 (1998)). "This does not mean," the United States Supreme Court has cautioned, "that 'state citizenship or residency may never be used by a State to distinguish among persons.' " *Id.* (quoting *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 383 (1978)). "Nor must a State always apply all its laws or all its services equally to anyone, resident or nonresident, who may request it so to do." *Baldwin*, 436 U.S. at 383.

The district court in denying Olsen's application to modify held that it lacked jurisdiction over Olsen, as Olsen wasn't currently subject to any Iowa requirements and his underlying conviction didn't take place in Iowa. The court of appeals, although couching its holding as a problem of ripeness and not jurisdiction, similarly concluded that it couldn't entertain Olsen's modification request claim because, as a nonresident, Olsen wasn't yet subject to Iowa's registration requirements.

But these points miss the thrust of the privileges and immunities claim that Olsen brings. An issue is ripe for adjudication if it involves "an actual, present controversy, as opposed to one that is merely hypothetical or speculative." *Barker v. Iowa Dep't of Pub. Safety*, 922 N.W.2d 581, 590 (Iowa 2019) (quoting *State v. Bullock*, 638 N.W.2d 728, 734 (Iowa 2002)). There is no dispute that

Olsen's return to Iowa would trigger a registration requirement; we know this from the fact that Olsen previously had to register when he lived in Iowa. His Iowa registration obligation lasts until at least 2030. There is thus nothing hypothetical or speculative about whether Olsen would be subject to the registration requirements. Olsen's constitutional challenge is that Iowa Code § 692A.128(3) grants Iowa residents a statutory right to access the courts for modification, while he as a nonresident is denied this right.

"When examining claims that a citizenship or residency classification offends privileges and immunities protections, we undertake a two-step inquiry." *Sup. Ct. v. Friedman*, 487 U.S. 59, 64 (1988); *see also Democko v. Iowa Dep't of Nat. Res.*, 840 N.W.2d 281, 293 (Iowa 2013). First, we must determine whether a challenged statute implicates a "fundamental" privilege or immunity. *Democko*, 840 N.W.2d at 293 ("The United States Supreme Court has declared the Clause protects nonresidents from discrimination only with respect to 'fundamental' privileges or immunities." (quoting *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 218 (1984))).

The Supreme Court has long held that the right to access the courts of a state is a fundamental right. *See McBurney*, 569 U.S. at 231 ("[T]he Privileges and Immunities Clause 'secures citizens of one State the right to resort to the courts of another, equally with the citizens of the latter State.'" (quoting *Mo. Pac. R. Co. v. Clarendon Boat Oar Co.*, 257 U.S. 533, 535 (1922))); *McKnett v. St. Louis & S.F. Ry.*, 292 U.S. 230, 233 (1934) ("The privileges and immunities clause . . . requires a state to accord to citizens of other states substantially the same right of access to its courts as it accords to its own citizens."). But this doesn't mean that a nonresident's access to the courts must be identical to that of a resident. *See Canadian N. Ry. v. Eggen*, 252 U.S. 553, 562 (1920). No violation occurs so long as a nonresident's access is "reasonable and adequate for the enforcing of

any rights" the nonresident may have, even if not "technically and precisely the same in extent as those accorded to resident citizens." *Id.* A claim for deprivation of one's constitutional right of access to courts must allege (1) an underlying cause of action, whether anticipated or lost, and (2) official acts frustrating litigation. *Christopher v. Harbury,* 536 U.S. 403, 415 (2002).

Iowa Code § 692A.128(3) eliminates Olsen's ability to pursue his modification claim because he doesn't live, work, or attend school in Iowa. *See id.* § 692A.101(20). Olsen argues that he has met all the requirements necessary to seek modification—except his residency status. The residency restriction imposed by § 692A.128(3) prohibits nonresidents from seeking the same fundamental privilege to access Iowa's courts that a resident receives. Olsen thus satisfies the first part of the analysis that the statute denies him, as a nonresident, a fundamental privilege or immunity granted to residents.

We turn to the second prong of the test: "whether the state can show sufficient justification for the discrimination."[1] *Democko,* 840 N.W.2d at 293; *see also Friedman,* 487 U.S. at 65. Neither party presented evidence about any justification—or lack of one—for the statute's different treatment of residents and nonresidents in pursuing modification. The State argued that the law avoids tasking district courts with deciding modification applications for nonresidents who are not yet required to register in Iowa. And indeed, courts afford states

---

[1]The dissent includes a footnote suggesting that the Supreme Court in *Sosna v. Iowa,* 419 U.S. 393, 409–10 (1975), has already decided that residency requirements as a precondition for filing suit are constitutional. Neither the parties nor the district court cite (let alone discuss) *Sosna.* That's perhaps because the Court in *Sosna* relied on the fact that states generally have the right to dictate the grounds on which a marriage may be dissolved, since domestic relations have "long been regarded as a virtually exclusive province of the States." *Id.* at 404. *Sosna* mentions other cases, however, in which state residency requirements have been struck down as unconstitutional (when imposed as a qualification for welfare payments, voting, and medical care, for example). *Id.* at 406. To be sure, not all residency requirements are unconstitutional. As we explain, though, whether this particular residency requirement—falling far beyond the realm of domestic relations—is constitutional is not dictated by *Sosna*'s holding.

"considerable leeway in analyzing local evils and in prescribing appropriate cures." *United Bldg.*, 465 U.S. at 222–23 (quoting *Toomer v. Witsell*, 334 U.S. 385, 396 (1948)). This latitude is particularly appropriate when a state "is merely setting conditions on the expenditure of funds it controls." *Id.* at 223. But the record as it stands offers nothing to enable us to evaluate the State's justification. The record contains no information about the actual threat that permitting nonresidents to apply for modification might pose to court operations or to the state purse more generally.

The Supreme Court confronted a similar problem in *United Building & Construction Trades Council v. Mayor & Council of Camden*, a case in which a trade association challenged a city ordinance that required employees of contractors on city projects to reside in the city. 465 U.S. at 210. After finding a fundamental right at stake under the Privileges and Immunities Clause, the Court turned to the second prong of the analysis, looking to whether the city had shown a "substantial reason" for treating residents and nonresidents differently. *Id.* at 222 ("[T]he inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them." (alteration in original) (quoting *Toomer*, 334 U.S. at 396)). But the Court was unable to conduct that analysis, stating:

> [W]e find it impossible to evaluate Camden's justification on the record as it now stands. No trial has ever been held in the case. No findings of fact have been made. . . . It would not be appropriate for this Court either to make factual determinations as an initial matter or to take judicial notice of Camden's decay. We, therefore, deem it wise to remand the case . . . .

*Id.* at 223.

A similar problem presents itself in this case. Although we review constitutional challenges to a statute de novo, *In re Detention of Schuman*, 2 N.W.3d 33, 44 (Iowa 2024), we're hamstrung in evaluating the justification for the

discriminatory treatment of nonresidents in this case on the record as it stands. Neither party presented evidence on this point and the court made no findings of fact. "[S]tatutes are cloaked with a presumption of constitutionality." *State v. Hess*, 983 N.W.2d 279, 284 (Iowa 2022) (quoting *State v. Aschbrenner*, 926 N.W.2d 240, 246 (Iowa 2019)). We will not declare statutes unconstitutional "unless they are shown to clearly, palpably and without doubt infringe upon constitutional rights," *Chi. Title Ins. v. Huff*, 256 N.W.2d 17, 25 (Iowa 1977) (en banc) (quoting *State v. Kueny*, 215 N.W.2d 215, 217 (Iowa 1974)). We're unwilling to venture further where, as here, neither side has presented evidence regarding the State's justification for treating residents and nonresidents differently. We thus remand for the parties to present evidence and for the district court to rule on Olsen's constitutional challenge in light of that evidence.

### III.

An appellate court may affirm a district court ruling on any ground urged by the prevailing party in the district court, even if the district court didn't rely on that ground in its ruling. *Veatch v. City of Waverly*, 858 N.W.2d 1, 7 (Iowa 2015). The State argued in the district court, and argues again on appeal, that even if Iowa Code § 692A.128 applies to Olsen, he isn't eligible for modification because five years haven't passed from the date of commencement of his requirement to register as mandated under § 692A.128(2)(*a*). The district court, while not directly addressing this argument, implicitly ruled against the State when it held that Olsen met all the requirements to seek modification other than the residency requirement.

Based on Iowa's classification of Olsen's sexual offense, Olsen was initially required to register for ten years when he moved to Iowa in 2009. *See id.* § 692A.106(1). Under Iowa Code § 692A.128(2)(*a*), offenders with his

classification are ineligible for modification until five years have passed from "[t]he date of the commencement of the requirement to register."

When Olsen violated his registry requirements by failing to timely report that he had purchased a new vehicle, an additional ten years were added to his registration term. *See id.* § 692A.106(4). The State argues that the five-year period before Olsen could seek modification restarted when his original ten-year term of registration ended in January 2020. In other words, the State asserts that Olsen isn't eligible for modification again until January 2025—five years after his *second* ten-year registration requirement began. Olsen, on the other hand, argues that the additional ten-year registration term does not kickstart a new five-year waiting period before he becomes eligible for modification.

Analysis of Olsen's date of eligibility for modification centers on two statutes. Iowa Code § 692A.128(2)(*a*) states that for sex offenders with Olsen's offense classification, "[a]n application [for modification] shall not be granted unless . . . [t]he date of the commencement of the requirement to register occurred at least . . . five years prior to the filing of the application." A different statute, Iowa Code § 692A.106(4), imposes an additional ten years for registry violations. It provides that "[a] sex offender who is convicted of violating any of the requirements of this chapter shall register for an additional ten years, commencing from the date the offender's registration would have expired." *Id.*

Olsen's conviction for violating his registration requirements in 2017 added, under § 692.106(4), ten years to his original ten-year term. But the State argues that the mandatory five-year period to become eligible for modification doesn't begin until the *additional* ten years starts. Under this argument, even if Olsen had never left Iowa, he could not have applied for modification until *fifteen years* after his initial registration. Nowhere is this suggested in chapter 692A.

Reading the text of the statutes together reveals the error in the State's (and dissent's) analysis. Under Iowa Code § 692A.128(2)(*a*), the five-year clock to become eligible for modification begins at "[t]he date of the commencement of the requirement to register." The date of the commencement of Olsen's registration requirement was September 2009. For Olsen, there was only one "requirement to register" and thus only one "commencement." *See id.* Olsen was not required to *re*register when the ten years added to the end of his term started running. His registration requirement continued uninterrupted.

The dissent contends that the "the" in the phrase "commencement of the requirement to register" in § 692A.128(2)(*a*) specifies "a particular legal event that triggered the requirement to register," and that "the requirement" referred to for Olsen must mean the ten years that were added based on the registration violation. But why? The dissent's claim begs the question by assuming that the added ten years creates an event triggering the requirement to register. The word "the" in this phrase could just as easily refer to the *original* requirement to register. Unless a defendant later commits a separate sex offense, the "commencement" of a defendant's duty to register happens only once, even if time is added on for a registry violation. Indeed, this is consistent with how the Seventh Judicial District Department of Correctional Services—certainly no stranger to modification applications or to applying these statutes—read the requirement when it filed its report stating that Olsen satisfied the five-year minimum threshold in September 2014.

The dissent also cites other provisions in chapter 692A that refer to "initial" and "subsequent" registration requirements to suggest that the ten-year addition constitutes a subsequent, and thus separate, registration requirement. *See id.* §§ 692A.103(1), .104(1). But none of these provisions suggest any "subsequent" registration is required when time is added for a registry violation under

§ 692A.106(4). Again, when a defendant commits a violation and time is added to the end, there is no need to reregister later, and the "commencement" of the duty to register remains the initial registration. Section 692A.103 suggests that "subsequent" registration is associated with a subsequent *sex offense conviction. See id.* § 692A.103(1) (referring to the duty to register "upon a first or subsequent conviction" for "any sex offense").

Olsen's failure to timely report that he had purchased a new vehicle violated his sex offender registration requirements, but it didn't trigger any duty to register a second time as a sex offender. Section 692A.106 illuminates a couple points on this path, stating that "[a] sex offender shall, upon a second or subsequent conviction *that requires a second registration*, or upon conviction of an aggravated offense, or who has previously been convicted of one or more offenses that would have required registration under this chapter, register for life." *Id.* § 692A.106(5) (emphasis added). First, this statute shows that when the legislature wants to require a *second* registration, it directly says so in the statute. Second, if Olsen's 2017 conviction was a "conviction that requires a second registration" (and it's not), then his requirement to register would be *for life* under § 692A.106(5), not an additional ten years.

The dissent's suggestion that Olsen *concedes* in his brief the correctness of the dissent's interpretation confuses Olsen's argument. Olsen's argument is that had he not violated his registration requirements in 2017, his period of registration would have ended in 2020. While this means that Olsen wouldn't have had to register but for his 2017 violation, it does not mean that Olsen has conceded that the "*commencement* of the requirement to register" begins anew when his original term would have ended. *See id.* § 692A.128(2)(*a*) (emphasis added). Olsen strenuously disputes the notion that the ten-year addition imposes some new registration requirement restarting the clock for modification eligibility.

Recent amendments to § 692A.128 that the dissent recites offer no aid to the dissent's interpretation. The legislature largely rewrote § 692A.128 in 2022. *See* 2022 Iowa Acts ch. 1063, § 1 (codified at Iowa Code § 692A.128 (2023)). The amendments were not made retroactive and thus do not apply to this case. The amendments now provide a host of other requirements that severely limit a registrant's opportunity for modification. *Id.* § 692A.128(2)(*a*) (2024). Given the significant changes, the new statute offers little assistance in interpreting the prior version of the statute that applies in this case.

The district court implicitly ruled in Olsen's favor on this threshold eligibility question when it held that "Olsen meets all of the requirements to seek modification" other than the residency requirement. The Seventh Judicial District Department of Correctional Services also concluded that Olsen satisfied the requisite five-year period. Because Olsen waited the required five years from the date of the commencement of the requirement to register, and because the time added to his registration requirement does not create any *new* duty to register, he is eligible to apply for modification. As a result, we reject the alternative ground that the State offers to affirm the district court's ruling.

IV.

For these reasons, we vacate the decision of the court of appeals, reverse the district court judgment dismissing Olsen's application to modify his sex offender registration requirements, and remand for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Waterman, Mansfield, and Oxley, JJ., join this opinion. McDonald, J., files a dissenting opinion, in which Christensen, C.J., and May, J., join.

**MCDONALD, Justice (dissenting).**

I respectfully dissent. Pursuant to Iowa Code section 692A.128 (2021), the district court has the authority to modify the sex offender registration requirements on application of the offender. *Becher v. State*, 957 N.W.2d 710, 714 (Iowa 2021). Under the version of the Code in force when Olsen filed his petition, the statutory modification procedure involved two steps. In the first step, the district court must determine whether the sex offender is eligible to apply for modification. *See id.* If the offender is eligible to apply for modification, the district court has discretionary authority to grant or deny the modification request. *See* Iowa Code § 692A.128(5) ("The court may modify the registration requirements under this chapter."); *Becher*, 957 N.W.2d at 714 ("The word 'may' ordinarily vests the trial court with discretion."). Under the plain language of the statute, Olsen was not eligible to apply for modification because an insufficient amount of time had passed since the commencement of his current sex offender registration obligation. The district court thus did not err in denying Olsen's application for modification, and I would affirm the judgment of the district court.

In August 2009, Olsen pleaded no contest in Wisconsin to second-degree sexual assault of a minor and several related misdemeanors. The Wisconsin court granted Olsen a deferred judgment and placed him on probation. Olsen was not required to register as a sex offender under Wisconsin law, which exempted those receiving deferred judgments from the requirement.

Olsen was living in Iowa at the time of the Wisconsin conviction. Unlike Wisconsin, Iowa law did not exempt those receiving deferred judgments from the sex offender registration requirement. Based on the classification of his Wisconsin conviction, Olsen was required to register as a sex offender in Iowa

for ten years. *See* Iowa Code § 692A.16(1) (2009). His initial registration period commenced on August 25, 2009, and would have expired on August 25, 2019.

On February 10, 2017, Olsen was convicted of violating the sex offender registry, first offense, in violation of Iowa Code section 692A.111(1) (2015). He was incarcerated for approximately four months for that offense (among others, it appears). When a "sex offender is incarcerated during a period of registration, the running of the period of registration is tolled until the offender is released from incarceration for that crime." *Id.* § 692A.107. Because Olsen's initial registration period was tolled while he was incarcerated, his initial registration period that would have expired on August 25, 2019, was extended until January 8, 2020.

Olsen's 2017 conviction for violating the sex offender registry had additional consequences. As relevant here, his 2017 conviction triggered a requirement that Olsen register as a sex offender for "an additional ten years, commencing from the date the offender's registration would have expired." *Id.* § 692A.106(4). This new, additional registration obligation arising out of the 2017 conviction commenced on January 9, 2020, and it is set to expire on January 9, 2030.

After Olsen was released from prison, he moved to Illinois, where he currently resides. He was not required to register as a sex offender in Illinois. In August 2021, Olsen filed a petition in Scott County to be removed from the sex offender registry in Iowa. According to the petition, he sought "to return to Iowa, . . . specifically Scott County." Since he was not living in Iowa at that point, Olsen also had no registration obligation in Iowa. A sex offender who is no longer a resident of Iowa is placed on "inactive status" and no longer required to register in Iowa until the offender reestablishes a residence in Iowa. *See id.* § 692A.106(7) (2021).

The State resisted Olsen's petition for modification. The State argued the district court lacked jurisdiction over the petition because Olsen was not a sex offender within the meaning of the Code because he did not work, live, or attend school in Iowa. In addition, Iowa Code section 692A.128(3) provided that a petition for modification "shall be filed in the sex offender's county of principal residence." Since Olsen did not live, work, or attend school in Iowa, he did not have a "principal residence" here and thus could not apply for modification. *See id.* § 692A.101(20) (defining a "principal residence" for a sex offender as where the person lives, works, or attends school in the state). The State further argued that Olsen was ineligible for modification because a petition for modification cannot be granted until at least five years after the commencement date of the registration obligation. *See id.* § 692A.128(2)(*a*).

Olsen responded to the State's motion. Olsen argued that the residency requirement in the statute, if interpreted to prohibit his petition for modification, violates the Privileges and Immunities Clause of the United States Constitution and the privileges or immunities clause of the Iowa Constitution because it unlawfully discriminates against out-of-state residents. With respect to the mandatory five-year waiting period, Olsen argued that he was eligible for modification because the five-year waiting period is measured from the date of commencement of his initial registration in 2009 and not from the date of commencement of his current registration obligation in 2020.

The district court denied Olsen's application. The district court concluded that because Olsen was not an Iowa resident and was not subject to any ongoing registration requirement, it lacked jurisdiction to remove Olsen from the sex offender registry prior to Olsen moving to Iowa. If Olsen wished to be removed from the sex offender registry, the court stated, he would first need to move to Iowa, register as a sex offender, and then file an application for modification. The

district court did not reach Olsen's constitutional arguments under the Privileges and Immunities Clauses or the State's argument regarding the five-year waiting period.

Like the district court, I do not think it necessary to reach Olsen's constitutional claims to resolve this case. *See Simmons v. State Pub. Def.*, 791 N.W.2d 69, 74 (Iowa 2010) ("[W]e prefer to decide cases on statutory rather than constitutional grounds . . . ."); *City of Des Moines v. Lohner*, 168 N.W.2d 779, 782 (Iowa 1969) (stating this court does "not consider constitutional questions unless it is necessary for the disposition of the case"). Although I need not reach the constitutional questions Olsen raises, it appears to me the majority's constitutional analysis is demonstrably erroneous. Chapter 692A does not make a threshold distinction between residents and nonresidents of Iowa or citizens and noncitizens of Iowa. *Cf. United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 216–17 (1984) (explaining that a residency restriction that *ipso facto* excludes noncitizens triggers scrutiny under the Privileges and Immunities Clause). The sex offender registry requirement applies to those who reside in Iowa as well as those who work or attend school in Iowa even if not a resident in Iowa. Iowa Code § 692A.101(20)(*c*). With respect to the statutory right to petition to be removed from the registry, chapter 692A treats Iowa residents and nonresidents and Iowa citizens and noncitizens the same: only those on active status who are required to register can petition to be removed from the registry. The statutory scheme thus does not violate the Privileges and Immunities Clause. *See McBurney v. Young*, 569 U.S. 221, 231 (2013) ("The Privileges and Immunities Clause 'secures citizens of one State the right to resort to the courts of another, *equally with the citizens of the latter State.*'" (emphasis added) (quoting *Mo. Pac. R. Co. v. Clarendon Boat Oar Co.*, 257 U.S. 533, 535 (1922))); *State v. Yeoman*, 236 P.3d 1265, 1268–69 (Idaho

2010) (holding that sex offender registration requirement did not violate the Privileges and Immunities Clause); *Commonwealth v. Becker,* 879 N.E.2d 691, 701–02 (Mass. App. Ct. 2008) (rejecting privileges and immunities challenge because "[t]he defendant was not barred from entering Massachusetts, and he was not subjected to any harsher regulation than any other citizen of the Commonwealth"); *People v McGarghan,* 852 N.Y.S.2d 615, 619 (Sup. Ct. 2007) (dismissing privileges and immunities challenge to registration requirement).

The deficiency in the court's constitutional analysis is revealed when one recognizes the court gives Olsen more rights than sex offenders residing in Iowa. Sex offenders residing in Iowa must be placed on the sex offender registry before they can petition to be removed from the registry. Olsen, according to the court, does not even need to be placed on the sex offender registry before he can petition to be removed from the registry. It is unclear to me what federal or state constitutional provision gives nonresidents of Iowa greater rights to access the courts than residents of Iowa. In the end, I conclude that chapter 692A gives Olsen "access to the courts of th[is] state upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have." *Canadian N. Ry. v. Eggen,* 252 U.S. 553, 562 (1920). The statute provides him the same right as all Iowans: register as a sex offender first and then petition to be removed from the registry. Neither the Federal or State Constitution requires more.[2]

Turning to the statutory argument, to determine whether Olsen was eligible for modification, I begin with the language of the statute at issue. *See*

---

[2]The court's constitutional analysis errs in another respect. Even assuming the statute contained a residency requirement, a residency requirement, even a durational residency requirement, as a precondition to filing suit is constitutional where, as here, the area being regulated is one traditionally left to the individual states. *See Sosna v. Iowa,* 419 U.S. 393, 409–10 (1975) (affirming one-year durational residency requirement for filing petition for dissolution of marriage); *People v. Parker,* 46 Cal. Rptr. 3d 888, 896 (Ct. App. 2006) (holding that five-year residency requirement for sex offender to file a petition for rehabilitation and pardon did not violate the privileges and immunities clause).

*Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) ("Any interpretive inquiry thus begins with the language of the statute at issue."). Pursuant to Iowa Code section 692A.128(1), a sex offender "may file an application in district court seeking to modify the registration" only if the following preconditions are met:

> *a.* The date of the commencement of the requirement to register occurred at least two years prior to the filing of the application for a tier I offender and five years prior to the filing of the application for a tier II or III offender.
>
> *b.* The sex offender has successfully completed all sex offender treatment programs that have been required.
>
> *c.* A risk assessment has been completed and the sex offender was classified as a low risk to reoffend. The risk assessment used to assess an offender as a low risk to reoffend shall be a validated risk assessment approved by the department of corrections.
>
> *d.* The sex offender is not incarcerated when the application is filed.
>
> *e.* The director of the judicial district department of correctional services supervising the sex offender, or the director's designee, stipulates to the modification, and a certified copy of the stipulation is attached to the application.

*Id.* § 692A.128(2). Since Olsen was a tier III offender, the contested issue in this case is whether "[t]he date of the commencement of the requirement to register occurred at least . . . five years prior to the filing of the application for a tier II or III offender." *Id.* § 692A.128(2)(*a*).

The plain language of the statute makes clear that Olsen was not eligible for relief at the time he filed his application. Section 692A.128(2)(*a*) provides that an offender is not eligible for modification unless five years had passed since "the date of the commencement of *the requirement to register*." *Id.* (emphasis added). The use of the definite article "the" limits the term "requirement to register." *See Nielsen v. Preap*, 586 U.S. 392, 408 (2019) ("[G]rammar and usage establish that

'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.' " (second alteration and omission in original) (quoting *Merriam-Webster's Collegiate Dictionary* 1294 (11th ed. 2005))); *Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000) ("[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.' " (quoting *Brooks v. Zabka*, 450 P.2d 653, 655 (Colo. 1969) (en banc))); *State v. Hohenwald*, 815 N.W.2d 823, 830 (Minn. 2012) ("The definite article 'the' is a word of limitation that indicates a reference to a specific object."). By definition, "*the* requirement to register" necessarily refers to a particular legal event that triggered the requirement to register from which Olsen seeks relief. For Olsen, the legal event that triggered his current requirement to register was the 2017 conviction for violating the sex offender registry. In the absence of that conviction, Olsen's registration obligation would have expired on January 8, 2020. It is thus clear that "the requirement to register" from which he seeks relief commenced on January 9, 2020. Pursuant to section 692A.128(2)(*a*), Olsen was not and is not eligible for relief until five years after January 9, 2020, or January 9, 2025.

Olsen implicitly concedes this is the correct interpretation of the statute. In support of his argument that Iowa has jurisdiction over his application for modification, Olsen concedes that "the requirement to register" arises out of his 2017 conviction and not his 2009 conviction. His brief explains that his "obligation to register in Iowa [is] based solely on the Iowa conviction from Muscatine County for the registration violation in 2017." His brief goes on to state: "Olsen's obligation based on the Wisconsin conviction was only 10 years. That has now expired. But for the Muscatine County registration violation, Olsen would no longer have an obligation in Iowa." He continues, "It logically follows

that Olsen's current registration obligation in Iowa is the direct result of an Iowa conviction." He concludes that his "obligation to register is directly related to an Iowa conviction—the 2017 conviction in Muscatine." Olsen is correct: "the requirement to register" from which he seeks relief was imposed as a result of his conviction for violating the sex offender registry in 2017.

Despite the plain language of the statute and Olsen's repeated concessions, the court nonetheless concludes that Olsen is eligible to seek modification. As the court sees things, there is only one beginning to the requirement to register: Olsen's initial registration date. The court concludes that the requirement to register triggered by Olsen's 2017 conviction merely extended his initial registration obligation and did not trigger a new obligation. But that argument misapprehends how chapter 692A operates as directed in the statute.

The statute draws a distinction between initial and subsequent registration requirements. Iowa Code section 692A.103(1) provides that a sex offender shall be required to "register in compliance with the procedures specified in this chapter." Each separate registration requirement commences a new registration period that requires the offender to register with the sheriff of the relevant county "within five business days of being required to register." *Id.* § 692A.104(1). The requirement that the offender register with the sheriff applies to both "the initial or subsequent registration" requirements. *Id.* § 692A.104(7). The distinction between the initial and subsequent registration requirements continues throughout chapter 692A. *See id.* § 692A.104(7) ("Except as provided in subsection 8, *the initial or subsequent registration* and any notifications required in subsections 1, 2, 4, 5, and 6 shall be by appearance at the sheriff's office and completion of *the initial or subsequent registration* or notification shall be on a printed form, which shall be signed and dated by the sex offender." (emphases added)); *id.* ("If the sheriff uses an electronic form to complete *the*

*initial registration* or notification, the electronic form shall be printed upon completion and signed and dated by the sex offender." (emphasis added)); *id.* § 692A.108(1) ("A sex offender shall appear in person in the county of principal residence after the offender was *initially required to register*, to verify residence, employment, and attendance as a student, to allow the sheriff to photograph the offender, and to verify the accuracy of other relevant information during the following time periods after the *initial registration* . . . ." (emphases added)); *id.* § 692A.109(1)(*i*) ("When a sex offender is released from incarceration . . . the court shall . . . [i]nform the sex offender that the offender must submit to being photographed by the sheriff of any county in which the offender is required to register *upon initial registration* and during any appearance to verify relevant information required under this chapter." (emphasis added)).

A recent amendment to section 692A.128 bolsters this point. *See* 2022 Iowa Acts ch. 1063, § 1 (codified at Iowa Code § 692A.128 (2023)). Section 692A.128(2) now provides that "[f]or an offender whose requirement to register as a sex offender commenced prior to July 1, 2022," like Olsen, "an application shall not be granted unless . . . [t]he date of the commencement of *the requirement to register* occurred at least . . . five years prior to the filing of the application for a tier II or tier III offender." Iowa Code § 692A.128(2)(*a*) (2024) (emphasis added). In contrast, for those whose requirement to register commenced after July 1, 2022, eligibility for modification is measured from the date of initial registration:

> 3. For an offender whose requirement to register as a sex offender commenced on or after July 1, 2022, an application shall not be granted unless all of the following apply:
>
> *a.* A period of time has elapsed since the offender's *initial registration* as follows:

(1)(a) Except as otherwise provided in subparagraph division (b), a tier I offender *initially registered* at least ten years prior to the filing of the application.

(b) A tier I offender who was under twenty years of age at the time the offender committed a violation of section 709.4, subsection 1, paragraph "b", subparagraph (2), subparagraph division (d), *initially registered* at least five years prior to the filing of the application.

(2) A tier II or tier III offender *initially registered* at least fifteen years prior to the filing of the application.

*Id.* § 692A.128(3) (emphases added). I infer from this recent amendment that eligibility for modification as measured from "the requirement to register" in subsection (2) means something different than the eligibility for modification as measured from the "initial registration" in subsection (3). *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) (describing the canon of "meaningful variation" according to which, "[i]n a given statute, the same term usually has the same meaning and different terms usually have different meanings"); *Bribriesco-Ledger v. Klipsch*, 957 N.W.2d 646, 650 (Iowa 2021) ("A material variation in terms suggests a variation in meaning.").

In addition to being at odds with the statutory text and Olsen's concessions, the court's interpretation of the statute is also at odds with the purpose of the statute. *See Maxwell v. Iowa Dep't of Pub. Safety*, 903 N.W.2d 179, 182–83 (Iowa 2017) ("We construe the statute 'in light of the legislative purpose.'" (quoting *In re A.J.M.*, 847 N.W.2d 601, 605 (Iowa 2014))). "[T]he purpose of the registry is protection of the health and safety of individuals, and particularly children, from individuals who, by virtue of probation, parole, or other release, have been given access to members of the public." *Id.* (alteration in original) (quoting *State v. Iowa Dist. Ct.*, 843 N.W.2d 76, 81 (Iowa 2014)). If the court were correct that an offender is eligible to pursue modification five years

after the initial registration date, then all offenders who violate the registry more than five years after the initial registration date would be immediately eligible to be removed from the registry despite a recent violation of the statute. To make this point more concrete, under the court's reading of the statute, Olsen would have been eligible to be removed from the sex offender registry the day after he was released from prison, only four months after the statute required him to register for a second ten-year period and more than two years prior to the date of commencement of the new registration obligation. Can it be that the legislature wanted to protect the public by requiring those convicted of violating the sex offender registry to register for an additional ten-year period due to their demonstrated noncompliance with the sex offender registry but also wanted those same persons to be immediately eligible to petition to be removed from the registry even prior to the commencement date of the new ten-year registration requirement? Clearly not. Surely, a construction that vitiates the statute's manifest object cannot be a correct interpretation of the statute. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012) (explaining that an "interpretation that furthers rather than obstructs the document's purpose should be favored").

For these reasons, I respectfully dissent.

Christensen, C.J., and May, J., join this dissent.